ALFRED JOHNSON, Respondent, *v.* STEAM GAUGE AND LANTERN COMPANY, Appellant.

In an action to recover damages for injuries sustained by plaintiff, an employee of defendant, alleged to have been caused by its negligent omission to construct a fire escape sufficient to meet the requirements of the act directing the construction of fire escapes on the outside of factories like that of the defendant (Chap. 409, Laws of 1886, as amended by chap. 462, Laws of 1887), these facts appeared: There was a door in the rear of the factory opening on the first floor; this was three feet above the court yard, and beneath this was an area giving access to the basement. To reach this door three steps leading to a platform in front of the door had originally been erected over the area, forming a covering to it. The platform and steps were supported by iron stanchions. There was a fire escape ladder directly over the platform, its lowest round ten feet above it. Prior to the fire this entrance to the factory had been closed and the steps leading to the platform, also, as plaintiff's evidence tended to show, one plank of the platform, had been removed for the purpose of putting in a chute running from the court yard to the bottom of the area, leaving the iron stanchions exposed and so much of the area uncovered. The evidence authorized a finding that the portion of the platform left was so narrow as to render it impossible for a person dropping vertically from the ladder to land upon it. The factory caught fire, and plaintiff, to escape from the burning building, went down the ladder, and when his feet were on the bottom round, became unconscious and dropped therefrom. When he recovered consciousness he found himself lying across the chute. The court charged that if plaintiff dropped upon the platform and was there injured he could not recover. *Held,* that the evidence justified a finding that plaintiff did not drop upon the platform, but upon the stanchions or chute; that the jury properly found defendant guilty of negligence in leaving the stanchions and chute in the condition they were and the area but partially covered by the narrow platform; and so, that it had failed to furnish a proper fire escape within the meaning of the statute.

Reported below, 72 Hun, 535.

(Argued April 29, 1895; decided May 21, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 20, 1893, which denied a motion by defendant for a new trial and ordered judgment in favor of plaintiff on a verdict.

This action was brought to recover damages for injuries received by plaintiff through the alleged negligence of defendant.

The facts, so far as material, are stated in the opinion.

*Louis Marshall* for appellant. The burden of proof rested upon the plaintiff to establish that his injuries were occasioned solely by negligence of the defendant in maintaining the chute, and in the absence of proof indicating how his injury occurred there can be no presumption that it was occasioned by any neglect of duty on the part of the defendant; and the evidence fails to show actionable negligence. (*Tolman* v. *S. B. & N. Y. R. R. Co.*, 98 N. Y. 198; *Cordell* v. *N. Y. C. & H. R. R. R. R. Co.*, 75 id. 330; *Reynolds* v. *N. Y. C. & H. R. R. R. R. Co.*, 58 id. 248; *Bond* v. *Smith*, 113 id. 278; *Pauley* v. *S. G. & L. Co.*, 131 id. 97, 100; *Searles* v. *M. R. R. Co.*, 101 id. 661; *Taylor* v. *City of Yonkers*, 105 id. 209.) Assuming that the defendant was negligent because it maintained the chute near the bottom of the fire escapes, the evidence fails to indicate that its presence had any casual relation to Johnson's injury. (*Marble* v. *City of Worcester*, 3 Gray, 481; *Fogg* v. *Nahant*, 98 Mass. 478; *Healy* v. *Earle*, 30 N. Y. 208; *Pakalnischky* v. *N. Y. C. & H. R. R. R. Co.*, 83 id. 424; *Sheldon* v. *H. R. R. R. Co.*, 29 Barb. 226; *Morrison* v. *N. Y. C. & H. R. R. R. Co.*, 32 id. 668; *Harvey* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 481; *Bajus* v. *S. B. & N. Y. R. R. Co.*, 103 id. 231; *Williams* v. *D., L. & W. R. R. Co.*, 39 Hun, 430; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90.) Under the circumstances, the statutory duty to provide fire escapes having been created but shortly before the accident, the defendant being a mere lessee of the premises, for a term which would soon expire,

and upon conditions which prohibited the making of altera-
tions, the statute being crude in form and indefinite in its pro-
visions, and imposing the duty of enforcement upon the fac-
tory inspector and his deputies, the approval by the latter of
the structures maintained by the defendant and their location
operated as a compliance by the defendant with the require-
ments of the statute, and a complete answer to any charge of
negligence. (*Pauley Case,* 131 N. Y. 96; *Keeley* v. *O'Con-
nor,* 106 Penn. St. 321; *Lafflin* v. *R. & S. R. R. Co.,* 106 N.
Y. 136; *Dongan* v. *T. C. Co.,* 56 id. 264; *Loftus* v. *U. F.
Co.,* 84 id. 455; *Burke* v. *Witherbee,* 98 id. 562.) The plain-
tiff, a man of mature years, having acquired knowledge equal
to that of the defendant of the character and position of the
fire escapes, assumed the risks and perils thus apparent, and is
thereby debarred from recovery. (*Gibson* v. *E. R. R. Co.,*
63 N. Y. 499; *De Forest* v. *Jewett,* 88 id. 264; *Shaw* v.
*Sheldon,* 103 id. 667; *Hickey* v. *Taaffe,* 105 id. 26; *Appel* v.
*B., N. Y. & P. R. R. Co.,* 111 id. 550; *Williams* v.
*D., L. & W. R. R. Co.,* 116 id. 628; *Buckley* v. *G.
P. R. M. Co.,* 113 id. 540; *Ryan* v. *L. I. R. R.
Co.,* 51 Hun, 607; 124 N. Y. 654; *Pitcher* v. *N. Y. C. &
H. R. R. R. Co.,* 127 id. 678; *Davidson* v. *Cornell,* 132 id.
228; *LaCroy* v. *N. Y., L. E. & W. R. R. Co.,* 132 id. 570;
*Fitzgerald* v. *N. Y. C. & H. R. R. R. Co.,* 59 Hun, 225.)
It was error to permit Dr. Tait to testify that the injuries sus-
tained by Johnson indicated to his mind that Johnson's foot
did not strike a flat surface, but a sloping surface. (*Ferguson*
v. *Hubbell,* 97 N. Y. 507; *Van Wycklen* v. *City of Brooklyn,*
118 id. 424; *Schwander* v. *Birge,* 46 Hun, 66; *People* v.
*Rector,* 19 Wend. 569; *People* v. *Bodine,* 1 Den. 311; *Wil-
son* v. *People,* 4 Park. Crim. Rep. 619; *People* v. *Rogers,*
13 Abb. Pr. [N. S.] 376; *Kennedy* v. *People,* 39 N. Y. 245.)
The exceptions to the remark of plaintiff's counsel in summing
up entitled the defendant to a new trial. (*Williams* v. *B. E.
R. R. Co.,* 126 N. Y. 97.)

*Walter S. Hubbell* for respondent. The defendant was
clearly negligent. (*Willey* v. *Mulledy,* 78 N. Y. 310;

*Schwander* v. *Birge*, 33 Hun, 186; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90.) The plaintiff did not assume the risk of incurring the injury in question, nor was he guilty of negligence contributing to it. (*Pantzar* v. *T. F. M. Co.*, 99 N. Y. 368; *McGovern* v. *C. V. R. R. Co.*, 123 id. 280; *Davidson* v. *Cornell*, 132 id. 228, 235; *Kain* v. *Smith*, 89 id. 375; *McMahon* v. *P. H. I. O. Co.*, 24 Hun, 48.)

PECKHAM, J. The plaintiff was another of those unfortunate victims who suffered damage and some of whom suffered death consequent upon the destruction by fire of the factory rented by the defendant in the city of Rochester in November, 1888. In the case of *Pauley* against this defendant, reported in 131 N. Y. 90, we had occasion to review the circumstances attending the terrible catastrophe in which that plaintiff's intestate lost his life. We there held that the law of 1886 (Chap. 409), as amended by chap. 462 of the Laws of 1887, imposed the duty upon the owners or occupants of a certain class of factories to provide fire escapes therefrom, and if, from an omission to perform such duty, an operative was injured, he might recover damages. It was also held that this duty being the creation of the statute, was measured by it, and could not be made to exceed its terms. Prior to the passage of these acts an owner or occupant of a factory not peculiarly exposed to the danger of fire by the character of the work carried on within it, was not bound to anticipate a merely remote or possible danger and to take measures to prevent its occurrence. Such an owner or occupant was not bound by the common law to take any extra and unusual precautions for the purpose of protecting the operatives against the danger arising from fire, which such owner or occupant was not reasonably bound to anticipate. But by the passage of the acts in question we held that a duty was imposed upon the owner or occupant of the prescribed class of factories, for an omission to perform which the operatives who sustained damage caused by such omission might recover. Upon

the facts presented in the *Pauley* case we held that the defendant had not been shown guilty of any violation of the act resulting in damage to the plaintiff, and that no actionable negligence against it had been shown on the trial.

The case now before the court does not involve any of the questions decided in the *Pauley* case. If it did, we should hold ourselves concluded by the decision of that case, although subsequent reflection upon the rule as therein laid down leads us to the belief that it was without doubt correctly decided. The plaintiff in this case was injured while attempting to escape from the burning building by means of the fire escape, which had been attached to the east wall of what is called the elevator shaft of the so-called wing building of the factory. He came down the fire escape ladder until his feet reached the bottom rung, ten feet above the platform herein spoken of, when the heat of the iron and the fire, which was blazing out from the windows past which he descended, and the pain consequent upon the burns which he received from the flames as he was passing down the escape, and the terrible excitement of the moment, all combined to render him temporarily unconscious, and he dropped from the fire escape, and upon recovering consciousness found himself lying across the chute used for the purpose of delivering boxes from the court yard into the door of the factory in the story below, at an angle of about forty-five degrees.

The defendant alleges that it is impossible upon any view of the evidence in the case to ascertain the cause of the plaintiff's injuries, or whether they arose from a cause for which the defendant was liable, or from one for which it was not liable, and that to sustain the judgment against the defendant in this case would be to attribute liability to the defendant upon a purely conjectural and speculative theory. And the defendant urges that within the rule which demands evidence that plaintiff's injuries were caused by some negligence, or by some improper act on the part of the defendant, the plaintiff has entirely failed to prove his case.

In order to make the reasons for our decision as clear as

may be some few further facts must necessarily be stated. It is enough for our purpose here to concern ourselves with the south wall in the so-called wing building of this factory and the ground and structure surrounding it. The south wall ran the whole width from east to west, and formed the northern boundary of a court yard, and that court yard extended south for a distance of more than one hundred feet to Centre street, running east and west. At Centre street this court yard was about 30 feet wide, and somewhat wider at its northern extremity, where this south wall of the wing building crossed it. There was within this court yard an open space of 6 feet 2 inches from the south wall of the wing building southerly to the north wall of what is called the boiler building; and the north wall of this boiler building was about 14 feet high. There was thus left an open space between these two buildings 6 feet 2 inches wide and 14 feet deep, which in the case is called the areaway. The roof of this boiler house formed the paved court yard over which one passed in going south to the exit from the court yard on Centre street. From about the center of the south wall of the wing building an elevator shaft projected to the south, the east wall of which stretched across the areaway and continued up to the full height of the factory wing building. The south wall of the elevator shaft was the north wall of the boiler building and the west wall of the shaft crossed this area again, and the area thus was bounded by the elevator shaft. Persons coming from Centre street into the court yard and going north towards the factory wing building would pass over and upon the paved roof of the boiler building and would thus reach the open area 6 feet and 2 inches wide and 14 feet deep, separating the factory wing building from the paved court yard. There was a door in this south wall of the wing building leading into that building at this point, which was just east of the elevator shaft, and the door was about 3 feet above the level of the paved court yard, and in order to reach the door three steps and a platform were placed over the area and connecting the court yard and

offering a means of entering the factory door. These steps and platform were laid upon iron stanchions leading from the court yard to the door. The platform, one side of which was against the south wall, had been originally between 3 and 4 feet wide and this platform and the steps leading up to it from the court yard formed a covering over the areaway. Down the east wall of the elevator shaft the fire escape ladder had been placed and the south ends of the rungs were two feet 8 inches from the south wall of the wing building, so that a man coming down the ladder facing west or towards the elevator shaft with his back to the east and leaning on the outer or southern edge of the fire escape, would if he dropped straight down land upon the platform above mentioned if it had been maintained in its original condition.

Sometime prior to the fire the entrance to the factory over these steps and platform through the door in that south wall had been closed and fastened and no one any longer entered in that way. The steps leading up to the platform had been taken away and as some of the evidence tended to show one board of the platform itself had been removed, thus leaving the iron framework exposed upon which the steps and the one board of the platform had rested, and leaving but two or perhaps three boards still remaining as a portion of the platform. These steps and the portion of the platform had been removed for the purpose of putting in a chute, running from the court yard down to the bottom of the area and into a door of the factory at that spot. The chute was placed at an angle of about 45 degrees, or perhaps a little steeper, and consisted of two or three parallel boards with risers on each side from 5 to 6 inches high. The chute thus ran directly from the court yard between these iron stanchions and along under the platform down to the door below. There was evidence tending to show that the west side of this platform was built directly against the east wall of the elevator shaft, and that the platform itself came close up against the south wall of the wing building. That is the evidence of the defendant; but the evidence on the part of the plaintiff tended to show

that there was a space of at least a foot and perhaps a foot and
a half between the elevator wall and the west side of the plat-
form.   The defendant also gave evidence tending to show
that the platform in the condition it was at the time of the
fire was three feet wide, and projected four inches beyond
the south end of the rungs of the fire escape ladder.   It will
thus be seen that even upon the defendant's contention, a
person coming down the fire escape and getting out to the
extreme edge of the ladder, the furthest away from the south
wall of the burning building, would, if he dropped mathe-
matically straight down from the lowest rung of the ladder,
land within 4 inches of the south edge of the platform which
was partly covering this area space, and under which ran this
steep chute.   If there were but the least inclination of the
body to the south when falling, it would drop outside of and
beyond the platform.   Upon the part of the plaintiff the evi-
dence tended to show that the platform was only from 20 to
30 inches wide.

The precise point contended for by the defendant may now
be appreciated.   It is said on its part that this fire escape was
well and properly constructed, and regarding the first story of
the factory as on the grade of the paved court yard, the fire
escape came down as far as the statute required; that the
defendant at the grade of the court yard had furnished a plat-
form which was the same as the earth itself, and if the
plaintiff on dropping from the fire escape fell onto this
platform (or earth) and in that way sustained the injury
of which he complains, the defendant would not be liable,
for the reason that having furnished a fire escape as pro-
vided by statute, and the plaintiff having been injured in
dropping upon the earth from a perfectly constructed fire
escape, the defendant could not be held liable for that
misfortune, and however improper may have been the plac-
ing of the chute at that particular spot, yet if the plaintiff
sustained no injury on account of its position, the defendant is
clearly not liable in this action.   We will assume that if the

plaintiff sustained injury from falling upon the platform, the defendant would not be liable and that it is necessary for the plaintiff to show that such was not the fact. We also agree with defendant's counsel that if the plaintiff gave no evidence whatever from which an inference might properly be drawn as to where he did sustain the injury, whether from a fall upon the platform or a fall into the chute, and it is left to pure speculation or guess work to decide what did cause his injury, the defendant cannot be held liable. It is true there is no direct evidence on the subject from an eye witness. The defendant says that the plaintiff himself does not pretend to be able to state how it was that he received the injuries in question. No one saw him when he fell; no one was aware of his presence there at the time. He himself got so far down the fire escape as to place his feet on the last rung of the ladder, and just at the very moment of dropping he became unconscious. Whether he fell on the platform or on one of these skeleton iron stanchions or on the chute, plaintiff very frankly says he cannot state; and there is thus, as the defendant urges, an entire dearth of evidence upon which to sustain any recovery in this action.

After a careful reading of the evidence and much reflection upon the inferences that might legitimately be drawn from it, we are of opinion that the plaintiff proved enough upon the question as to the cause of his injuries to call for its decision by the jury instead of by the court. We do not think that such decision rested upon mere speculation, and consequently we do not agree that the verdict of the jury was nothing more than a guess. Upon questions of fact it is sufficient that there is a balance of evidence or probabilities in favor of one side or the other of the dispute, and upon such balance courts will rely in deciding the weightiest issues. ( *Weeks* v. *Cornwell,* 104 N. Y. 325 at 336.) There is evidence here to establish upon a firm foundation these facts; the existence of the iron stanchions upon which originally were laid the steps from the court yard up to the platform and also the platform itself leading to the door of the factory; that all the

boards composing the steps had been removed, and at least one plank of the platform, and that the width of the platform, was not more than 20, certainly not more than 30 inches; that directly between these iron stanchions and continuing underneath this platform and connecting the court yard and the factory story 14 feet below was this chute running down at an angle of 45 degrees; that the fire escape was on the east wall of the elevator shaft and the end of each rung of the ladder furthest from the wing building wall was at least 2 feet 8 inches therefrom; the last rung of the ladder was 10 feet higher than the platform, and a man, with his feet on that rung and holding on by his hands, would be that distance above the level of the platform, his face would be toward the west and his body as far to the south on the ladder as he could get for the purpose of getting away from the flames coming out of the windows in the south wall; and if the platform were but 20 inches wide, his left side would be at least a foot south of and beyond the edge of the platform and hanging over this chute and almost directly over the skeleton stanchions upon which the steps had once rested. If the platform were 30 inches wide, he would still overreach it.

Upon these facts the inference is entirely admissible and, as we think, is plainly a natural one that if the plaintiff were even motionless when he dropped, he would land outside of the platform, and that he would either strike the stanchion or the chute, and upon this point it is not material to determine which. Judging from the position in which he found himself when his consciousness returned, with his body lying across the chute, his feet to the west and his head to the east of it, the inference from the facts is neither forced nor unnatural, nor mere speculation, and it is that he first struck the west stanchion and had then fallen over upon the chute. He did not strike the chute first, as in that case, falling or dropping directly into it, he would have gone down the chute to the bottom. He probably did not strike the platform first, as it was much too narrow, in that aspect of the evidence which' the jury might assume, to afford a landing place for him as he

fell.   The jury, therefore, had the right to find from the evidence that in all probability the plaintiff did not first strike the platform or the chute, and there was but one thing else that he might have done and that was to strike the stanchion and break his leg in the manner described and then fall over across the chute as already mentioned.   The character of the injuries to the left leg of the plaintiff was such as to favor the inference that he was thus injured.   He sustained what the surgeons call a compound comminuted fracture of the leg below the knee, the bones thus broken being driven up and into the knee joint, showing that the force was applied from beneath and upon a slope and not laterally.   This could have been caused by striking as the body descended against this iron stanchion, breaking the fall and tumbling the plaintiff from that position over upon his back across the chute.

The evidence of the surgeon, to which exception was taken by the defendant, in regard to the position in which the plaintiff was when the injury occurred was, we think, admissible. He described fully and minutely the character of the injury, the position, extent and nature of the fractures and all the other details which were open to his actual observation and which were capable of exact description.   The opinion which he gave, while not absolute, was at the same time admissible as stating the probabilities as to the position of the leg and the point from which the blow came, and the facts which he obtained from his examination formed a reasonable ground upon which to base an opinion as to the cause of the fracture. (*People* v. *Willson*, 109 N. Y. 345, 353.)   Taking all the evidence which he gave upon the facts which he observed from an actual examination of the injury itself, the resulting opinion was not an unnatural or a forced one, and while it was one which possibly any individual might give upon like knowledge derived from such examination of the injury, we think even if the mere opinion itself were erroneously admitted it was not of that character which, when taken in connection with all the other facts in the case, would warrant our reversal of this judgment on that ground.

The question whether the defendant was not guilty of actionable negligence in thus erecting a dangerous structure under the fire escape, and leaving so narrow a platform as to render it impossible for a person dropping vertically from the fire escape to land on it, was left to the jury in a very clear and concise charge by the learned judge who tried this case. Upon the request of the defendant the judge charged that if the plaintiff, when he dropped from the fire escape, landed on the platform and was there injured, that he could not recover; and the jury by the verdict have found as from this evidence we think they had a right to find, that the plaintiff did not drop on the platform, and that he did drop upon and strike either the stanchion or the chute, in all probability the stanchion. The jury have found that the defendant was guilty of negligence in allowing these stanchions and this chute to be placed and to remain in the condition they were at the time of this accident and but partially covered by this narrow platform, and the judge charged that if they found such to be the fact they would have the right to say that the defendant had failed to furnish a proper fire escape within the meaning of the statute. In this, we think, there was no error.

Upon the whole case, we think, the question of defendant's liability was properly submitted to the jury, and the judgment entered upon the verdict in favor of the plaintiff should be affirmed, with costs.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.