Hatch, J.
The record is singularly free of conflicting testimony, and the questions presented may be disposed of on undisputed facts. The origin of the fire is not known, and while the *158 complaint alleged negligence on the defendant’s part, in its origin,, such claim was abandoned upon the trial, and is not now urged. It is also conceded that the fire escapes were sufficient, and that no-liability can be predicated upon the failure of compliance with any statutory duty in that regard. The court below in its submission of the case, authorized the jury to say whether or not the fastening down of the windows made egress by them difficult, and if so, did this impediment prevent deceased from leaving the building,, whereby he lost his life? Claim is now made, and pertinaciously argued that this proposition presented a question of fact for the jury and that their finding upon it ought not to have been disturbed. The rule at common law did not require that the owner of a building was bound to anticipate its possible destruction by fire, where from the use to which it was put, or its location, it was not peculiarly exposed to danger from that source, in consequence of which the usual and ordinary mode of ingress and egress furnished by doors, stairs, halls, and window's might reasonably be deemed sufficient, and if the building was properly constructed the owner was not bound to take extraordinary precaution to prevent a possible injury by burning. Pauley v. Steam G. & Lantern Co., 131 N. Y. 90; 42 St. Rep. 636; Jones v. Granite Mills, 126 Mass. 84. This rule is not contended against, but the claim is advanced that by constructing the fire escapes and means of access, defendant lulled the deceased into fancied security, and made his position dangerous by fastening down the windows so they could- not be raised, and thus obstructed the means of escape. We think the view cannot be upheld by anything which appears in the case. Is it true that there was any obstruction to the fire escapes ? Assuming that the windows above the fourth floor were screwed down, we are unabled to see that it constituted such an obstruction as violated any obligation which defendant owed deceased. The windows themselves were frail of structure, and must have been easily broken out by a blow, and undoubtedly quicker than they could be raised and propped up. The evidence abundantly establishes this. Mroz states that he broke out the windows, with his shoes, and jumped. Hall ran down fom the fifth to the fourth floor; started to go further down, when he saw smoke coming up; came back,kicked out a window, and went down the escape. Adamslci reached the fifth floor, when he was forced back by the smoke,, knocked out a window found location of fire escape, went to window opposite, knocked it out, and went safely down. He was followed out of the same window by Ignazak. It does not appear that any of these men were delayed at the windows, or that they had any difficulty in effecting an exit. It is quite plain to be seen that the windows could not withstand a sharp blow or kick, and it is equally clear that either could be delivered as quiclcly as the windows could be raised. Indeed, Eadki, who reached the third floor, said that he kicked out the window, and went down the escape; that he. did not try to lift it up, for want of time. Hall states that he did not try to open the window, but kicked it out. This testimony, and the character of the structure-sufficiently indicate that the fastening of the window furnished no *159 more obstruction to reaching the escape than if it had not been fastened; for the emergency of the situation drove these men to the more speedy method of breaking out, instead of attemping to raise it For the latter, as was said, there was no time. No one who reached the escape was turned back, or prevented exit, on account of the fastening. ' It is said that the men were forbidden to break the windows, and consequently were deterred from doing it, or that an inference can be drawn that such was the case. There is no evidence of such fact, and it would be stultification of mediocrity to say that a notice evidently referring to the conduct of the business in the usual way interposed to constrain men to be burned up rather than break out a window. It could convey no such meaning when the building was burning, and ho inference can arise that it could, to any person.' Inferences that may be drawn are such as are reasonable. So far as the fourth floor is concerned there is no evidence that the window through which Lewandowski passed was fastened down, nor is there any evidence that if it was the men were delayed a single moment in effecting an opening. Those who broke it out were sworn, but they do not say whether the window was fastened or not, nor do they speak of any delay on account of it, nor is there a particle of evidence that deceased tried to reach the window. Lewandowski was three feet away when he threw himself on his face. He reached the window, and went at. After him came Jozwiack, who reached the window later. Deceased was not there, nor is it shown that he attempted to reach it, although he stood near Lewandowski. Proof stops here, and conjecture begins. We may say-that he was overcome by the smoke and acid fumes, or that he turned away, and fell down the stairs, or that he was confused, and went another way. But of proof there is none that he was prevented from reaching the window on account of delay in opening it, created by a fastening of which no proof exists, and of delay of which no one speaks. Conjectures of this character were condemned in the Pauley Case. As is expressed in one opinion, there is “food for speculation,” but “the law demands proof.” Bond v. Smith, 113 N. Y. 378; 22 St. Rep. 666. What we do know is that Huda did not reach the window. Another did after Huda’s companion had. This is all we know. The route by the bridge was open, the way to the roof unobstructed, and the windows at the escapes easily passed. We think this condition complied with the common-law obligation resting upon defendant, within the authorities cited, and that negligence cannot be predicated thereon.
If we say that the fastening was an obstruction, plaintiff is not assisted. Deceased had been at work in the factory for over twelve years. He was therefore familiar with the methods used, and his surroundings. All the witnesses who were called by plainiff were men engaged in the same general employment, and they each testify that the windows were fastened down, to their knowledge. Huda, from his length of service, the general knowledge of the men, the necessities of the business, and the process of manufacture, must be presumed to have known, or possessed the means of knowing, what was the common knowledge of all. The *160 condition being known, the risk of the situation was assumed. Crown v. Orr, 140 N. Y. 452; 55 St. Rep. 834, where it is said, “If he voluntarily entered into or continues in the service, without objection or complaint, having knowledge or the means of knowing the dangers involved, he is deemed to assume the risk, and to waive any claim for damages against the masteri,n case of personal injury to him.” There is no exception to this rule, but there are distinctions of fact not always entirely clear. To risks which the servant does not assume are pointed out in McGovern v. Central Vt. Railroad Co., 123 N. Y. 280; 33 St. Rep. 416, and still further applied in Davidson v. Cornell, 132 N. Y. 228; 43 St. Rep. 887, and many other cases. It is not profitable to enter into an extended disctission of them. It is sufficient now to say that, however much particular facts may obscure the distinction, and render the rule difficult of application, no case is found holding that liability attaches to the master where the work carried on produces the condition, and such condition is known, or the means of knowing it are furnished the servant. As applied here, the process of manufacture required a high and uniform temperature in the room. This was produced by keeping the windows closed. They were fastened down, and the notices posted. Other and better methods might have been devised, but defendant was not bound to adopt them. It had the right to use this. Sweeney v. Envelope Co., 101 N. Y. 520. This condition was known, or the means of knowing it were furnished Huda, and when he accepted and continued in defendant’s employ, with such knowledge, he accepted the risk, -as incident to the employment; and we find no case holding a different rule, applied to similar facts. Cullen v. Norton, 126 N. Y. 1; 36 St. Rep. 359. We think the reasoning in the Pauley Gase is decisive of all the principal questions involved in this appeal relating to the obligations of the defendant respecting the construction of the building, and the avenues of. escape therefrom. So far as the claimed defects in other portions of the building—as the absence of the railing from the stairs, the removal of one flight, and the substitution of .a ladder, and the holes in the floor—are concerned, it is answer sufficient now to say that it does not appear that these defects, if defects they were, were even connected with anything which Huda did, or with his loss of life. It is a matter of speculation, which, we have seen, is condemned. Nothing appears in Johnson v. Steam, Guage & Lantern Co., 146 N. Y. 152; 66 St. Rep. 276, which lends color to the claim. This case expressly reiterates the doctrine of the Pauley Gase, and the discussion of the facts clearly shows evidence removed from speculation and guess. They are certainly distinguishable from the present case, for here it is not known that Huda was heard or seen, alive or dead, after Lewandowski left him.
Other questions are presented by the record, but. we refrain from further discussion,.as they are not likely to again arise, if the view now taken be finally upheld. This length of discussion seemed to be required, in view of the importance of the case, and the pending of other actions. We are led to the conclusion that the order setting aside the verdict was right, and should be affirmed.