(53 Misc. Rep. 28)

SEMBLER v. COWPERTHWAIT et al.

(Supreme Court, Trial Term, Kings County. February, 1907.)

1. DEATH—DAMAGES.
    In an action for the death of a young man of 25 years, who resided with his father, who was 49 years of age, and earned about $12 a week, and was in good health and good habits, a verdict for $6,000 was not excessive.
    [For cases in point, see Cent. Dig. vol. 15, Damages, §§ 125–130.]

2. MASTER AND SERVANT—INJURY TO SERVANT—EVIDENCE.
    Plaintiff sued to recover for the death of his intestate, caused by jumping from the fourth story of defendants' burning building, in which he was employed. Defendants had long neglected to comply with an order of the city to provide adequate fire escapes. Plaintiff's intestate, finding no other means of egress from the building, jumped from the window and was killed. *Held* that, where the questions of negligence and contributory negligence and proximate cause and sudden peril were submitted under instructions without exception taken, a verdict for plaintiff would not be disturbed.

Action by John H. Sembler, as administrator, against Frank H. Cowperthwait and others. Judgment for plaintiff. Motion to set aside verdict and for a new trial. Denied.

Samuel E. Maires, for plaintiff.
Albert Stickney, for defendants.

CARR, J. In this action the jury have found a verdict for the plaintiff for the sum of $6,000 damages. The action was brought by the plaintiff to recover damages for the death of his son, a young man of 25 years of age, through the alleged negligence of the defendants. At the time of his death the young man resided with his father, earned about $12 a week, and was in good health and of good habits. His father, the plaintiff, was about 49 years of age at the time. On reflection I do not think the verdict of the jury is so large as to indicate

passion or prejudice, or to show any undue considerations influencing their judgment. I feel, therefore, that it is not my duty to set aside the verdict as excessive.

The other grounds specified in the motion to set aside the verdict are such that I should not disturb the verdict unless the plaintiff's complaint should have been dismissed at the close of his case. The defendants offered no evidence whatever which in any way either rebutted or aided the plaintiff's case. It appeared as a part of the plaintiff's case that on February 9, 1904, and for many years prior, the defendants were the landlords and had legal title to certain real property on Waverly avenue, in the borough of Brooklyn. This real property was occupied by structures used by a tenant for factory purposes; i. e., the manufacture of chairs. This tenant had occupied the premises for many years prior to the above-mentioned date, and had carried on in that place the same business during all the period of its occupancy. No proof was given as to the term or the circumstances of the letting under which the tenant was in occupation. The business carried on in the property in question was of such a nature that quantities of varnish, wood filler, and other inflammable substances were kept constantly in stock. The building itself consisted of an original structure, five stories high, fronting on Waverly avenue, which had been at one time a church edifice, and a brick extension in the rear, four stories high, which was connected with the older building by a door on each floor cut through a brick wall, which wall had been originally the rear wall of the older building. At no time prior to February 9th was there any fire escape on the original building, nor on the extension, except one iron ladder, without balconies, which was attached to the northwest corner of the extension, on the outside of the building, and which led from a window on the fourth floor of the extension to the ground. On September 12, 1899, a code of ordinances was adopted by the municipal assembly of the city of New York, known as the "Building Code." This Code was authorized by section 647 of the Greater New York charter (Laws 1897, p. 224, c. 378), and ratified by section 407 of the amended charter of 1901 (Laws 1901, p. 179, c. 466), and was in full force and effect from its adoption up to and subsequent to February 9, 1904, throughout the city of New York. City of New York v. Trustees, 85 App. Div. 361, 83 N. Y. Supp. 442. This ordinance provided, in section 103, among other things, that:

"Every factory, mill, manufactory or workshop, etc., * * * shall be provided with such good and sufficient fire escapes, stairways or other means of egress in case of fire as shall be directed by the department of buildings; and said department shall have full and exclusive power and authority within said city to direct fire escapes and other means of egress to be provided upon and within said building or any of them."

In February, 1903, the department of buildings notified the defendants in writing, which notice the defendants received at that time, requiring them to provide on the buildings in question forthwith—

"a fire escape, to consist of balconies, stairs, and rails, the same to be located on the easterly side of the building, with balconies at the second, third, fourth, and fifth stories; also place a fire escape on the westerly side of the extension, with balconies at the first, second, third, and fourth stories, with stairs

and hand rails, a drop ladder and a gooseneck ladder to the roof; also required to place an iron bridge, with guard rails, from a proper opening in the westerly side of the roof of the main building at the fourth story to the roof of the extension; also required to place a stationary iron ladder to the scuttle in the extension."

At no time prior to February 9, 1904, had the defendants complied with any of these directions, although nearly a year had elapsed since receiving the directions of the department of buildings. On February 9, 1904, some 25 to 30 men were at work on the fourth floor of the extension. This floor consisted of three rooms, with connecting doors. A fire broke out in some of the lower floors of the extension. The plaintiff's intestate, who was at work on the fourth floor of the extension, discovered the fire and gave the alarm. Clouds of smoke and flames were said to be coming up through the floor. It appears that he and some other employés attempted to descend a stairway from the fourth floor downwards, but found it choked with smoke and flame. They then entered the old church building and found the stairway there similarly choked. They opened various hatchways, leading downward, and found the same conditions; and they then returned to the room on the fourth floor in which a window opened to the iron ladder which reached to the ground at the northwest corner of the extension. Around this ladder was a crush of men, some 20 or more, struggling and fighting for access to it. Young Sembler then went to a window and jumped to the ground, a distance of some 60 feet. He sustained injuries which caused his death the same day. His example was followed by some others, several of whom escaped without injuries, except burns received in the building. One fellow employé remained in the room until the ladder was cleared, some seven or eight minutes, as he testified, after Sembler jumped, and escaped by the ladder without injuries, except some burns.

Do these facts make out a case on which the plaintiff should have been allowed to go to the jury? The defendants had ample time to comply with the directions of the department of buildings. These directions were binding on them as owners. Gorman v. McArdle, 67 Hun, 484, 22 N. Y. Supp. 479; McLaughlin v. Armfield, 58 Hun, 376, 12 N. Y. Supp. 164; Abrayan v. Mfg. Nat. Bank, 16 N. Y. St. Rep. 750; Johnson v. Steam Gauge & L. Co., 146 N. Y. 152, 40 N. E. 773. Proof of the violation of the ordinances constituted at least a prima facie case of negligence in failing to provide additional means of escape as directed by the public authorities. Knupple v. Knickerbocker Ice Co., 84 N. Y. 488. Of course, unless this negligence was the natural or proximate cause of young Sembler's death, the negligence of the defendants was not actionable. Sembler's death was the result of his jump; but the jump was not necessarily the proximate cause, in a legal sense, of his death. Usually the question of proximate cause is one of fact for the jury to answer. It is only when the facts show clearly that the result was of such a character that reasonable prudence and foresight would not forecast its happening as a consequence of the defendants' negligence that such negligence may be held in law as not the proximate cause of the injury. This proposition of law is too well settled to require citation of authority. Under the proof

in this case, this question of proximate cause should have gone to the jury, as it did. Likewise it was a question for the jury whether Sembler was guilty of contributory negligence in jumping from the window. The rule of "a sudden peril" applied unmistakably. The question of contributory negligence under the proof in the case was clearly one of fact, and not of law. The question of assumption of risks, or "injuria non fit volenti," was likewise for the jury. Schwandner v. Birge, 33 Hun, 186.

I do not understand the learned counsel for the defendants to take any exception to the manner of the court's charge, but simply to the submission to the jury "in that way" of the questions hereinbefore discussed. On the question of defendants' negligence in failing to comply with the ordinance, the defendants offered no evidence whatever; and the prima facie case, being uncontroverted, became conclusive on that point. Motion for a new trial denied. Thirty days' stay and 60 days' time to make a case granted to defendants.

Motion denied. Thirty days' stay and 60 days' time to make a case granted to defendants.