INDUSTRIAL COMMISSION OF OHIO *v.* LATHROP.

(Decided April 22, 1935.)

*Mr. John W. Bricker,* attorney general, and *Mr. Herbert W. Mitchell,* for plaintiff in error.

*Messrs. Yager, Bebout & Stecher,* for defendant in error.

OVERMYER, J. Lawrence Lathrop was an employee of The Green-Sawyer Company while that company was erecting a water plant in the village of Delta, Ohio, in July, 1930. His widow, Mildred Lathrop, defendant in error, made claim before the Industrial Commission for a death award, alleging that her husband's death, which occurred on August 21, 1932, of pulmonary tuberculosis, was directly caused by an injury he sustained on July 12, 1930, while in the course of his employment, or that such injury accelerated a latent case of tuberculosis he had at the time

of the injury and thereby caused active tuberculosis to develop and cause death.

The Industrial Commission rejected the claim and thereupon suit was brought in the Common Pleas Court, which resulted in a verdict for the widow. Judgment was entered on the verdict, and the commission prosecutes error, claiming that there was no basis for the verdict for the reason that there is no evidence connecting the death of Lathrop with any injury accidental in its origin and cause, occurring in the course of his employment, and claiming further that for this reason the trial court should have sustained the motion of the commission at the close of all the evidence for a directed verdict.

In her petition in the Common Pleas Court the plaintiff alleged that her husband was employed as before stated, and that on July 12, 1930, he was pushing a wheelbarrow full of sand up a plank incline to a cement mixer, when his foot or feet slipped because of the gravel on the incline, and the construction of the incline, causing the wheelbarrow loaded with sand to lose its balance, and that in attempting to stop the wheelbarrow from upsetting he strained the muscles, tissues, nerves and ligaments of his lungs and that portion of his body surrounding his lungs, which injury resulted in her husband contracting pulmonary tuberculosis, of which he died. She alleged said injury or injuries were received in the course of and arising out of his employment, and that the same directly and proximately caused, or directly and proximately contributed to cause, his death.

The answer of the Industrial Commission admitted the jurisdictional questions, the death of Lawrence Lathrop of pulmonary tuberculosis at the time alleged, that the claim was rejected by the commission, and then denied all other allegations of the petition.

The evidence is not disputed that on the date alleged Mr. Lathrop, at about the noon hour on Sat-

urday, was engaged in pushing a wheelbarrow load of sand up an incline to be dumped into a concrete mixer; that when at the top of the incline, and just as he applied extra exertion to tip the barrow and dump the load his foot or feet slipped on loose sand on the incline; that by some unusual effort he kept the barrow from falling; that another employee had to dump the barrow, and that Lathrop went home and went to bed. He remained in bed until the following Monday when he returned to work, but had to give it up. Soon thereafter, and after several days' work by him, he and other employees were laid off. He developed night sweats, coughing and other symptoms, and about a month after the alleged injury he consulted for the first time a doctor, who discovered an active case of pulmonary tuberculosis. Mr. Lathrop grew continually worse, and after spending the last few months in bed he died on August 21, 1932, more than two years after the alleged injury.

This court would have no difficulty in finding that the decedent suffered an accidental injury in the course of his employment on July 12, 1930, and if there were evidence in the record that such accidental injury was the proximate cause of the death, or was the proximate cause of the acceleration of death, as required by *Weaver* v. *Industrial Commission,* 125 Ohio St., 465, 181 N. E., 894, the judgment of the lower court would readily be affirmed.

Four physicians offered the medical evidence in the case, three of whom were called by the claimant and one by the commission. The first medical witness, Dr. Lathrop, a cousin of the deceased, and who was the doctor first consulted by him, testified on direct examination as follows:

"Q. Now, what is the fact as to whether or not a man may have tuberculosis of the lungs and he not know anything about it? A. He could have tuberculosis for a period of time and not know it.

"Q. Is that what is commonly known as latent tuberculosis? A. Yes. * * *

"Q. What effect, Doctor, would strain of the lungs have on a latent tuberculosis?

(Objection, sustained; and offer to prove that it *could* incite or flare up a latent T. B.)"

Dr. Wilkins, who attended the deceased at the last and filled out the death certificate, testified that the cause of death was pulmonary tuberculosis, but gave no opinion as to the cause of the decedent's having tuberculosis other than to say that tubercle baccilli are "very commonly present," and that "any injury severe enough to lower vitality to a certain point gives the germs a chance to become active." This answer was givén on offer to prove after an objection to the question calling for the answer had been sustained.

Dr. Holmes of Toledo, a specialist in diseases of the lungs, testified before the commission on rehearing of the claim, and his testimony was offered on trial in Common Pleas Court by the claimant, and by agreement was copied into the record, but objection to its admissibility in evidence made by the commission was sustained by the trial court. He had testified in part as follows:

"Q. Assuming, Doctor, that on the 12th of July, 1930, the claimant here, Lawrence Lathrop, was wheeling sand in a wheelbarrow, and weighing from 150 to 175 pounds, up a sloping incline and his feet or foot slipped causing a strain of the chest and pains in his chest at that time, *could* that, in your opinion, have caused the condition you found when you examined him? A. *Well, I don't really believe that it actually caused the condition, no.* I will put it that way.

"Q. Do you want to explain your answer, Doctor? A. Yes, I do. I think that this boy had some tuberculosis before this thing happened and the accident *could* very easily have aggravated tuberculosis which

was not active and produced the condition which he has now, by actual injury to his lung.

"Q. The question was, Doctor, whether it *could* have in your opinion, not whether it *did;* whether it *could?* A. Yes, I think it *could.*"

The hypothetical question was again repeated with variations, as to whether the incident of July 12, 1930, *could* have produced the condition in which the doctor found him, and he replied *"it could."* Further, he was questioned as follows:

"Q. Could you tell, Doctor, from your examination, whether or not the claimant here did have latent tuberculosis prior to the middle of July, 1930? A. No, I couldn't tell that.

"Q. Assuming, Doctor, that the claimant did have latent tuberculosis prior to July 12th, and received the injury that has been described to you before in the hypothetical question, *could* that have lighted up, aggravated or caused the latent tuberculosis to become active? A. (On offer to prove) Yes."

On cross-examination Dr. Holmes testified as follows:

"Q. Tubercle bacillis gets into the lung in what manner? A. Through the nose and throat into the lung.

"Q. Then it grows and causes the condition you find or did find in this man Lathrop? A. Yes.

"Q. Now, pulmonary tuberculosis is not caused by strain on the chest or body, is it? A. No."

All of the medical witnesses testified that pulmonary tuberculosis is a germ disease and that the germs enter through the nose and throat.

Dr. Masters, called by the commission, testified in answer to a hypothetical question covering the facts disclosed by the evidence, that in his opinion there was no connection between the alleged injury and the death.

We have set out the foregoing medical evidence offered, even that rejected, to show that all of it, even if admitted, would not show that the alleged injury of July 12th, 1930, *did have* a proximate causal connection with the death of claimant's husband, and that there was therefore no evidence upon which the case could be submitted to the jury, or upon which the jury could have based a verdict for claimant, and that therefore the motion of the commission at the close of the evidence for a directed verdict in its favor should have been sustained.

The rule adopted by all courts to construe liberally the provisions of the Workmen's Compensation Law in favor of workmen and their dependents does not waive the requirement that there must be some positive evidence upon which a verdict for a claimant can be based, and that such verdict can not be based upon mere guess or speculation. In this case there is no evidence in the record, competent or incompetent, to prove a proximate, causal connection between the alleged injury and the death more than two years later. The evidence was that it could have been a cause, but there was no evidence that it was the cause.

The judgment of the Court of Common Pleas is therefore reversed and final judgment is entered in favor of the plaintiff in error.

*Judgment reversed and judgment for plaintiff in error.*

LLOYD and CARPENTER, JJ., concur.