POSAN, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

(Decided February 20, 1939.)

*Mr. James Harrington Boyd* and *Mr. Wm. F. Miller,* for appellant.

*Mr. Thomas J. Herbert,* attorney general, and *Mr. P. R. Taylor,* for appellee.

OVERMYER, J.   The appellant, as a claimed dependent, brought this action in Common Pleas Court on appeal from the Industrial Commission of Ohio, which had rejected a claim for death award for the death of appellant's father.  The trial to a jury below resulted in a verdict and judgment for the commission, from which the appeal here is prosecuted.

The decedent, Frank Posan, was an employee of The Gulf Refining Company at Toledo, Ohio, and on February 19, 1931, while engaged in the course of his

employment and while carrying on his shoulder an iron girder or angle iron, weighing about 60 pounds, slipped or stumbled over some other iron in his path and fell on his back, with the angle iron falling or resting on his chest. In his fall, the iron he was carrying struck and broke his left leg just above the ankle, causing a bad fracture which thereafter incapacitated him from his labors. He applied for and received disability compensation up to the time of his death, which occurred on January 18, 1933, from cancer of the liver.

In the third amended petition, on which trial was had, it was alleged that in addition to the broken leg the angle iron also struck him across his chest "bruising his chest, stomach and liver on the right side of his body, flattening the kidneys, causing injuries to his liver and kidneys, permanently totally disabling him and finally causing his death from cancer of the liver, activated by said injury."

The only contested issue in the case is whether the evidence shows a causal connection between decedent's injuries of February 19, 1931, and his death from cancer of the liver on January 18, 1933. In this connection it is significant that the records of the hospital, where he was taken on the day of the injury and where he remained for two months, do not show from the diagnosis there made, which is in evidence, any complaints or findings of any injury or ailment to the chest, liver or kidneys—nothing but the fractured leg. The hospital report showing the case history mentions nothing but the "fracture of the tibia and fibula." The record further shows that in decedent's own application for disability compensation he described his injuries as "bruise and fractured left leg above ankle." The original application filed by claimant herein with the commission for a death award described the injuries causing death as "bruise and fracture of left leg above the ankle. Fracture in-

volves the ankle joint." It was in a supplemental petition filed with the commission on October 5, 1935, nearly three years after decedent's death, that claim was first made as to chest and liver and kidney injuries having caused cancer of the liver.

A monument to the skies awaits the man who can discover and demonstrate to the medical profession and the world the certain cause of cancer. This is apparent from the medical evidence in this record, and is a matter of such general knowledge that judicial notice may be taken of it. Certainly, on a question such as here presented, lay testimony would be of no avail, and the most that the medical witnesses upon whom appellant relies would say, was as follows:

A fully qualified physician who examined decedent at his instance nearly two years after the accident and a short time before decedent's death, a witness for the claimant, said:

"It is *possible* that this trauma *may have been* the exciting factor in activating the malignancy.

"In my opinion it *might have possibly* activated the malignancy.

"I would say that a history of trauma over this region *might have been* an inciting cause for the primary malignancy.

"I think it is *possibly* the inciting cause." (Italics ours.)

Asked if it was the *probable* cause, his answer was: "*Possibly* the inciting cause of the condition found." (Italics ours.) Asked what causes cancer of the liver, the answer was: "No definite cause." Asked the usual time between onset of cancer of the liver and death, the answer was: "I have seen patients that I knew had cancer of the liver and lived three years; others that lived only three months. *Don't know when it started.*" (Italics ours.)

Further, "It is *quite possible* that such a thing *may*

*have produced,* have been the exciting factor," etc. (Italics ours.)

Asked if "the possibility of its causing cancer would be *remote,"* the answer was, *"remote."* (Italics ours.)

Further:

"Q. Is it true from your medical knowledge and experience that trauma *may activate* liver malignancy? A. Why, not to my experience, no.

"Q. Your knowledge? A. There have been cases reported whereby *it has been suggested* that trauma was the activating cause of exaggerated symptoms of malignancy of the liver.

"Q. Doesn't the medical literature recognize that liver malignancy *may be activated* by trauma? A. *The literature doesn't recognize that, merely opinion of certain individuals of the medical profession."* (Italics ours.)

This witness concluded that continued trauma *might produce* malignancy, such as cancer of the lip, tongue, etc., as an exciting factor; that a single trauma *might produce* malignancy by destroying cells already diseased in some manner, but for one trauma to produce malignancy there must have been a condition existing of cancer present or ready to develop cancer; that he had never heard the theory advanced that trauma could actually produce cancer cells, and as far as he would go is to say it *"might be* an inciting cause." (Italics ours.)

The only other medical witness for claimant, one who had autopsied the decedent, testified:

"* * * fracture of that leg *may have* or *may not have had* something to do as the exciting cause.

"Q. Is it true, Doctor, or not, that trauma *may* activate liver malignancy? A. Well, *I couldn't say it is true,* but the supposition is of the majority of medical men that trauma does have a direct connection with causing cancer, and *may* activate it. *Nobody can possibly prove that.* I couldn't cite any authority,

simply judging from my reading and experience—*possible cause. I don't say it is the cause.*

"Q. How about the *probability* of fracture of the ankle being the cause of cancer of the liver? A. Well, I wouldn't say. I would say, in view of my personal knowledge, *it is a possibility.* I wouldn't say it is a *probability. Possibility."* (Italics ours.)

Asked what other *possibilities* besides injuries there might be of causing cancers, the witness named a number and concluded "All of these are only *possibilities, none of them proven."* (Italics ours.)

The only other medical testimony in the record is that of two doctors who testified for the commission in answer to hypothetical questions, and stated they could see no connection between the injuries described and the death by cancer of the liver, two years later.

We have quoted perhaps at too great length from the record, but it is justified by the result, which is that there was no evidence of any character in the record from which a jury could draw even a legal inference, let alone any positive evidence, that the injuries of February 19, 1931, *did have a proximate causal connection* with the death of decedent two years later. A verdict for claimant could not have been sustained on pure speculation and guesswork. Paragraph 2 of the syllabus of *Industrial Commission* v. *Lathrop,* 52 Ohio App., 55, 2 N. E. (2d), 828, (decided by this court).

The court charged the jury that the fact that decedent had been awarded and paid disability compensation for his injuries up to his death, was not evidence to be considered in determining the issue here made. Complaint is made of this by appellant. We see no merit in the complaint. On the contrary, it was proper so to charge.

Another complaint of appellant relates to alleged misconduct of a juror during the deliberations of the jury, and several affidavits of jurors were presented

with the motion for new trial below and are in the record. It has long been established that a verdict may not be thus impeached. The subject requires no further comment here.

Appellee in this court attacked the jurisdiction of the Common Pleas Court, and of this court, on the ground that in the various applications before the commission and the various petitions filed in Common Pleas Court there was an exchange of claimants as plaintiff, between Anna Posan, a daughter, by next friend, and Mary Posan, the widow, by next friend, the widow having been an adjudged incompetent in the early part of these proceedings. In view of our findings on the record evidence, we see no necessity for a discussion of that question by the court in this case.

The court finds no error in the record requiring or justifying a reversal of the judgment and the same is affirmed.

*Judgment affirmed.*

CARPENTER, J., concurs.
LLOYD, J., not participating.