**O'FLAHERTY, Plaintiff-Appellee v. INDUSTRIAL COMMISSION, Defendant-Appellant.**

Ohio Appeal, Second District, Franklin County.

No. 3734. Decided October 31, 1944.

John A. Connor and John D. Connor, Columbus, for plaintiff-appellee.

Thomas J. Herbert, Atty. Gen., Robert E. Hall and Albertus B. Conn, Asst. Atty. Gen'ls., Columbus, for defendant-appellant.

(SHERICK, J., of the Fifth Appellate District sitting by designation in place of BARNES, P. J.)

## OPINION

By GEIGER, J.

This case is before the Court on appeal by the Industrial Commission from a judgment of the Court below based upon the verdict of a jury that the plaintiff's decedent was entitled to participate in the fund of the Industrial Commission.

Briefly, the issues as joined upon the pleadings are, that plaintiff is the widow of the decedent; that on the 6th day of November, 1940, decedent was an employee of the Union Fork & Hoe Company under contract.

It is asserted that on the 6th day of November, 1940, the decedent received an injury while in the course of his employment which resulted in his death on the 28th day of November, 1940; that thereafter, on the 24th of April, 1941, plaintiff filed notice and preliminary application with the Industrial Commission, which claim was heard on the 14th day of June, 1943, and disallowed, the Commission denying her the right to participate in said fund upon the ground that the death of the decedent was not the result of an injury sustained in the course of and arising out of his employment.

The Commission for answer to the amended petition admitted the employment of the decedent and denies the other allegations.

The case was heard before a jury which found that the plaintiff is entitled to participate in the fund. The verdict of the jury was unanimous.

The plaintiff requested that the Court give to the jury certain special charges which were given.

It is alleged in the petition that on the 6th day of November, 1940, and for some time previous thereto the decedent was an employee of The Union Fork & Hoe Company, and was then engaged with another employee in loading a freight car with merchandise, among which were shovels; that at the

time the plaintiff was taking bundles of shovels from a truck and lifting them into the hands of fellow employees for piling in a freight car; that the bundles of merchandise then being loaded weighed between fifteen and forty-five pounds per package, but that there were two packages of what was known as "Never-break" shovels that weighed approximately 118 and 145 pounds which the decedent was required to lift a distance of three and a half feet vertically. It is asserted that the decedent for an unknown period of time previous to the 6th day of November, 1940, was afflicted with cardiovascular-renal disease and that as he lifted the last of the said heavier packages he slipped, and this combined with the weight of the shovels caused him to have a heart attack which resulted in his death on the 28th day of November.

The evidence presents a border line case.

During the trial the plaintiff-appellee offered in evidence an application to the Commission for the payment of money out of the insurance fund, which was prepared and signed by O'Flaherty during his lifetime, but was not filed with the Commission until May 5, 1941, after his death. In that application he states in answer to interrogatory 17, asking a description of the accident in detail:

"Claimant was lifting box of fire shovels and slipped injuring left side."

In answer to interrogatory 18 he states the nature of the injury to be,

"rather severe painful disturbances in the region of the left lateral chest and left intercostal region."

Only one fellow workman testified as to the incidents of the alleged injury and that witness states that nothing unusual occurred or was apparent in relation to the decedent, and that the decedent left the place where the work was being carried on, without any complaint. Another fellow worker, however, testified that shortly after the decedent returned he showed evidence of suffering pain and disclosed a pallid flush and vomited. The decedent then went to his home where he was attended by a physician who testifies as to the symptoms shown and his wife testifies as to the care she bestowed upon him in giving him hot applications and administering sedatives. By the 11th day of November he was so

restored to a normal condition that he returned to his work and continued in the service of the company until the 27th day of November when he left the factory, returned to his home and died that night, seated upright in a chair. His wife found him dead at six o'clock on the morning of the 28th.

A number of doctors testified in the trial.

Dr. Mahanna, for the Commission, testified at length. As disclosed by the bill of exceptions, (p. 152) Dr. Mahanna was asked:

"Q. In your opinion will the lifting of two heavy boxes within a short period of time of each other, one weighing approximately 110 to 117 pounds and the other weighing approximately 125 to 140 pounds, cause cardiovascular-renal disease?"

To which the Doctor answered, "No, sir, it will not". The cross-examination on the position thus taken by this Doctor did not shake his judgment that the lifting of these packages did not and could not have caused or accelerated the fatal termination of the decedent's illness.

Beginning on page 152 and extending for many pages, a hypothetical question was propounded which sought to cover all the matters in evidence that had been presented to the Commission, and on the bottom of page 158 the Doctor testified:

"It is my opinion that this man did have cardiovascular-renal disease and that on November 6th he suffered a coronary thrombosis which was followed by congestive heart failure, the latter terminating in death."

And on page 161 the Doctor testified, it was his opinion that "there is no relationship between the events of November 6, 1940, and the cause of the man's death."

On page 170 the question was asked:

"Q. Does unusual strain or an exertion of unusual effort have any effect on coronary thrombosis?

"A. It does not as I have already explained."

The net result of this Doctor's examination, which was long and technical, was that in his opinion the man had for some time been afflicted with arteriosclerosis and that he ultimately died in the natural progress of this condition from coronary thrombosis which was not caused or accelerated by

the lifting of the packages that were being stored in the box car.

Dr. K. H. Armen, (Record, p. 20, et seq.) was the doctor who attended Mr. O'Flaherty when he reached his home after the incident in the box car. He testifies at length as to the condition in which he found O'Flaherty and the treatment he prescribed. He states that O'Flaherty was suffering excruciating pain. This doctor did not claim that he was competent to testify as to whether the supposed accident would accelerate cardiovascular-renal disease from which he was suffering. On page 31 the final question was propounded:

"Doctor, if O'Flaherty died of cardiovascular-renal disease, as it is your opinion he did, would an unusual effort exercised on his part contribute to or accelerate his death?"

The question was objected to and the doctor did not further testify in answer to that interrogatory.

Dr. F. H. Jones testified at some length, (Record, p. 32, 37). On page 36 he was asked:

"Doctor, are you sufficiently familiar with cardiovascular-renal disease so as to be an expert in that field?"

His answer was, "No, I am not", and he offered no opinion.

Dr. E. E. Smith, (Record, p. 41, et seq.), was asked on page 43:

"Do you have sufficient knowledge from your practice of medicine to classify yourself as an expert on cardiovascular-renal disease?"

He answered that in thirty years practice a number of people who suffered and died from that had been treated by him.

On page 45 he was asked if he had sufficient experience to determine whether the exercise of a strenuous effort occasioned by the lifting of a weight of 140 pounds would have any effect upon contributing to or accelerating the death of one afflicted with that disease. On an affirmative answer he was asked:

"Would the exercise of the effort necessary to lift 140

pound weights have any effect upon one who is troubled with cardiovascular disease?"

to which, after the ruling of the Court he answered, on page 46:

"Yes, sir, I think an effort to raise 140 pounds would have an effect upon a person suffering from a cardiovascular disease."

And further on page 47:

"Any effort placed upon the heart is apt to cause it to act differently than it was normally. Several things might happen."

And the final question on page 47 was:
"The question is, would you say, Doctor, the greater the effort the more certain it is that effort would contribute to or accelerate the death? A. Yes."

In **Drakulich v Commission, 137 Oh St 82**, it is held:

"2. Since the issue of causal connection between an injury to a person * * and his subsequent death involves a scientific inquiry, such causal connection must be established by the testimony of medical witnesses competent to testify on this subject.
"3. Testimony that a person's death from cancer of the liver **could** have resulted from previous injury to his back is insufficient to prove causal connection between such injury and death. The proof in such case must establish a probability not a mere possibility."

We are confronted with the question of determining whether or not the testimony of the physicians was sufficient to establish a probability of the acceleration of the cardiac condition existing on the 6th of November. The only doctor testifying positively to this matter was Dr. Mahanna. (Record, p. 147, et seq.) This doctor postively testifies that the exertion incident to the lifting of the packages being stored in the box car would not promote or accelerate the cardiac condition from which he may have been suffering at that time. We do not feel that the testimony of the other physicians, one of whom, Dr. Smith, on page 43, testified that after the dece-

dent had been found in good health at the time he returned to work, his subsequent death from cardiovascular disease within six weeks would be a very rapid course of the disease, and that the effort necessary to lift 140 pounds weight would have an effect upon one troubled with cardiovascular-renal disease, and that the greater the effort the more certain it is that it would contribute to the acceleration and death, would meet the requirements laid down in **Drakulich v The Commission, 137 Oh St 82.**

The Court in its charge presented the question in this manner; after reciting the contents of the pleadings the Court stated:

"So, these are the issues: First, did Thomas O'Flaherty in the course of his employment, on the 6th day of November, 1940, receive an injury? Second, if he did so receive an injury, did such injury, if there was an injury, proximately cause or proximately contribute to cause his death sooner than death would have come to him but for said injury?"

Before the case was submitted to the jury, six requests were submitted by the plaintiff as special charges, five of which were given and the sixth refused. The Court in giving the special charges followed closely the statement of the law as found in **Malone, Appellee v Industrial Commission of Ohio, 140 Oh St 292,** which seems to be the latest pronouncement of the Supreme Court on the matters therein considered. The first syllabus is:

"The term 'injury' as used in the Constitution and in §1465-68 GC, as amended effective July 10, 1937, comprehends a physical or traumatic damage or harm, accidental in its character in the sense of being the result of a sudden mishap occurring by chance unexpectedly and not in the usual course of events, at a particular time and place.

"2. When in connection with an intentional act on the part of a workman which precedes an injury to him, something unforeseen, unexpected and unusual occurs which produces the injury or from which the injury results, it is accidental in character and result."

This is a well considered case and to further comment on it is not necessary.

It is asserted by the defendant that there was no competent evidence upon which the jury could properly predicate a verdict in that the record contains no competent evidence whatsoever tending to prove that plaintiff's decedent suffered a pre-existing cardiovascular-renal disease contrary to the holding in the case of **Ackerman, Appellee v The Industrial Commission, 131 Oh St 371.**

It is true that the witnesses in behalf of the claimant testified in detail that the man prior to the alleged accident of November 6th was in perfect health; that he attended to his duties and among other things unusual for a man fifty-nine years of age, walked seven miles to and from his place of employment. It is urged that from this evidence it could not be held that the decedent was then suffering from any heart affliction which was accelerated, and that all testimony tendered for the purpose of showing acceleration was incompetent. While it is true that the wife and other witnesses testified to the excellent physical condition of the decedent prior to November 6th, yet we find much evidence that would justify the conclusion that for a period of time prior to November 6th the man was suffering from a degenerating disease which might generally be classed as arteriosclerosis, and that the immediate cause of death was coronary thrombosis, followed by heart failure.

It is complained that the testimony of the expert medical witnesses on behalf of the plaintiff amounted to speculation and conjecture, and that their conclusions were the result of projecting one inference upon another. We do not find that the testimony of the physicians was subject to this infirmity, as the evidence as to the decedent's health and death was sufficient to remove it from the infirmity of being a mere inference.

Complaint is made by the defendant that the Court erred in admitting in evidence the application for compensation made by the decedent when he returned to work on November 11th. The Court admitted this evidence, however, charging the jury under the authority of **Coutellier v Industrial Commission, 126 Oh St 546.**

The fact that the paper signed was an inquiry addressed to the injured workman on the part of the Commission, which was in fact never filed during the lifetime of the workman, does not give it undue solemnity. It is competent if it is responsive to an issue in the case, but if it is a self-serving declaration (as this is) and the only evidence of accidental injury, why should its admission be proper? It is not a part of

the res gestae. The only thing that seems to sanction its admission is that it is a public document. But it never in fact acquired that importance, and even if it were a public document it has no evidentiary value. It is based upon self-serving declarations contained in the application as held in the second syllabus of Coutellier, et al. v The Commission. See also **Drakulich, Appellee v Industrial Commission, 137 Oh St 82.**

We are, however, of the view that the matter is finally settled in the case of **Reinert, Appellee v The Industrial Commission, 137 Oh St 159,** where the last paragraph of the first syllabus holds that such hearing (rehearing) shall be had and the evidence for and against the allowance of the claim submitted as in the trial of civil actions.

"2. In general, the same test must be applied to determine the admissibility of evidence proffered upon the rehearing of a claim under the Workmen's Compensation law as are applicable in the trial of civil actions."

We arrive at the conclusion that while there may have been sufficient evidence to establish the fact that the decedent had for some period before the 6th of November suffered from cardiovascular-renal disease, yet there is in this case no evidence, first, establishing the fact by competent testimony that the decedent suffered an accident in the loading of the freight car; and, second, there is no sufficient evidence to establish the fact that if he did suffer such accident that the same accelerated the death of the decedent due to the prior existence of his disease.

We are of the view that the decedent died not on account of the acceleration of the prior physical condition by reason of an accident, but on account of the natural progress of the disease from which he had been suffering for a considerable period.

Judgment of the Court of Common Pleas reversed and it is ordered that final judgment be entered for the Commission because of the complete failure to establish an injury in the course of his employment and failure to establish the fact that such injury, if suffered, accelerated the disease so as to cause an earlier death than he otherwise would have suffered.

SHERICK, J., concurs.
HORNBECK, J., concurs in judgment.