### BEARMAN v. PRUDENTIAL INS. CO. OF AMERICA.

### BEARMAN v. MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N.

### BEARMAN v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.

Nos. 4125–4127.

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1951.

David Prager and Edward Rooney, Topeka, Kan. (Jacob A. Dickinson, Topeka, Kan., was on the brief), for appellant.

Paul L. Wilbert, Pittsburg, Kan., and Douglas Hudson, Fort Scott, Kan. (Howard Hudson and Douglas G. Hudson, Fort Scott, Kan., A. B. Keller and C. A. Burnett, Pittsburg, Kan., were on the brief), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

In No. 4125 Bearman as a beneficiary brought an action to recover on an accidental death benefit provision in a policy of life insurance issued by The Prudential Insurance Company of America, hereinafter called Prudential. In No. 4126 Bearman as beneficiary brought an action to recover on an accident insurance policy issued by the Mutual Benefit Health and Accident Association, hereinafter called the Mutual Association. In No. 4127 Bearman as beneficiary brought an action to recover on a policy of accident insurance issued by The Order of United Commercial Travelers of America, hereinafter called Travelers. In each policy Bert E. Bearman was the insured and will be hereinafter referred to as the Insured.

The coverage provision in the Prudential policy, in part, reads as follows:

"The Monthly Instalments of the Accidental Death Benefit specified on the first page hereof shall be payable * * * upon receipt of due proof that the death of the Insured occurred * * *, as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which except in case of drowning or internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within sixty days of the accident, provided, however, that no Accidental Death Benefit shall be payable if the death of the Insured resulted * * * from bodily or mental infirmity or disease in any form."

The coverage provision of the Mutual Association policy, in part, reads as follows:

"Mutual * * * Does Hereby Insure Bert E. Bearman (herein called the Insured) * * * against loss of life, * * * resulting directly and independently of all other causes, from bodily injuries sustained during any term of this Policy, through purely Accidental Means * *.

    *      *      *      *      *      *

"If the Insured shall sustain bodily injuries as described in the Insuring Clause, which injuries shall, independently and exclusively of disease and all other causes, * * * result in any of the following specific losses within thirteen weeks, the Association will pay:

"For Loss of Life          $2,500.00."

The coverage provision of the Travelers policy, in part, read as follows: "Class A. Insured Members shall be indemnified in accordance with the terms hereinafter set out in this Article, against the results of bodily injury hereinafter mentioned, effected solely through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes."

The cases were consolidated for trial. The issue was whether the death of the Insured resulted solely from accident or was caused by disease. The trial court

directed a verdict in favor of Prudential, the Mutual Association and Travelers. Bearman has appealed.

On September 12, 1944, at about 9:00 a. m. the Insured and two of his employees were removing the dome from a furnace. The dome weighed about 300 pounds. As Insured stepped backward to let the dome down to the floor he struck his back on some object. He continued to supervise the work on the furnace until about 5:00 p. m. that day, when he returned to his home in his son's automobile, driven by the latter. He remained in bed for about four weeks at his home. Thereafter, for the period of about two weeks he was dressed and up about his home in the daytime. During the period of approximately six weeks he was under a doctor's care. He died October 31, 1944. From the time of his injury until his death he lost 20 pounds in weight. He was 57 years of age at the time of his death. Prior to the injury he was apparently in good health.

An autopsy was performed by Doctor John R. Roberts, a specialist in clinical pathology, of St. Louis, Missouri. Dr. Roberts is a graduate of St. Louis University School of Medicine, receiving his degree in 1926. For 11 years after his graduation, he was a full-time teacher at such school of medicine. In 1937 he took up clinical pathology in St. Louis. He has performed approximately 16,000 autopsies. He is a member of the American Board of Pathology and of the College of American Pathologists. The autopsy disclosed a thrombus completely occluding the left coronary artery. A microscopic examination disclosed an atherosclerosis of the left coronary artery, with thrombosis superimposed. Atherosclerosis is a thickening of one portion of the vessel, with necrosis, or death of tissue, in such thickened area, which may or may not rupture into the vessel. If it does rupture, a thrombosis follows. The autopsy disclosed a great deal of dead tissue, consisting of fatty acids and fatty acid crystals, cholestrin, and some calcification in the deeper portion of the involved area.

Dr. Roberts explained that atherosclerosis is very often spoken of as an atheromatous abscess; that the cause of death, in his opinion, was a rupture of the abscess, which plunged the material into the coronary artery and caused the thrombosis and the resulting occlusion. Dr. Roberts testified that the atherosclerosis from which Insured suffered was a disease, probably of years, certainly of many months standing, and that in his opinion there was no relation between the disease and the accident and no causal connection between the injury and the atherosclerosis, the rupture of the atheromatous abscess, the thrombosis, or the coronary occlusion. He further testified that the autopsy included an examination of the back and spine and that there was nothing at the time of the autopsy indicating any contusion or wound or bruise on the back and that there was nothing abnormal about the spine.

Dr. C. F. Young, who was Insured's attending physician after the accident, stated that he saw him on September 15, September 23, October 3 and October 22, 1944; that on the last occasion Insured was up at his home; that he saw no evidence of any external injury and diagnosed Insured's trouble as a sacro-iliac strain, and that in his opinion there was no causal connection between the injury resulting from the accident and the coronary occlusion.

Dr. W. T. Wilkening, a general practitioner, testified that he was present during the autopsy. He corroborated Dr. Roberts' testimony and described the condition of atherosclerosis as like an abscess or boil resulting in dead tissues which broke and discharged the contents into the artery. He testified that in his opinion there was no connection between the injury and the coronary occlusion.

It is obvious that the atherosclerosis, which is like an abscess, was not a latent, but a progressive diseased condition.

The primary question presented is whether the testimony of the medical experts introduced by Bearman was suf-

ficient to take the cases to the jury and support a finding that the accident and resulting injuries were the cause of Insured's death. None of those medical experts testified that, in their opinion, the accident and resulting injuries caused the atherosclerosis, caused the atheromatous abscess to rupture, or caused the thrombosis and the resulting coronary occlusion. They testified that trauma or strain may produce a coronary occlusion and that the injury might have contributed to Insured's death They were unwilling to state as their opinion that the accident caused the atherosclerosis, the rupture of the atheromatous abscess, the thrombosis, or the coronary occlusion.

■ Whether there was causal connection between the accident and resulting injury and the atherosclerosis, the rupture of the atheromatous abscess, the thrombosis, or the coronary occlusion presented a question for solution not within the competency of laymen, and a question with respect to which, only a medical expert with training, skill, and experience could form a considered judgment and express an intelligent opinion. Indeed, it perhaps would require a medical expert trained and experienced in a specialized field.[1]

■ The great weight of authority supports the rule that medical expert testimony to be sufficient to take the case to the jury must be to the effect that

the accident or injury probably caused the Insured's death; and that testimony to the effect that a causal connection between the accident or injury and Insured's ensuing death was possible, such as testimony that the accident or injury "might have," or "may have," or "could have" caused the death of Insured, is insufficient to take the case to the jury, because such testimony leaves the issue in the field of conjecture and permits the jury to speculate or guess as to the cause of death.[2]

The rule as stated above has been approved by the courts of New Jersey, where the policy in No. 4125 was written and was to be performed,[3] by the courts of Nebraska, where the policy in No. 4126 was written,[4] by the courts of Ohio, where the policy in No. 4127 was written,[5] and by the courts of Kansas, where the payments under the policies in Nos. 4126 and 4127 were to be made to the beneficiary.[6]

■ We conclude that the evidence introduced by Bearman was insufficient to take the case to the jury and that the court properly directed a verdict in favor of Prudential, Mutual Association, and Travelers.

■ Prudential, Mutual Association, and Travelers introduced the death certificate which was signed by one of Insured's attending physicians, Doctor E. D. Tanquary. It was admissible under §

1. See Ewing v. Goode, C.C.Ohio, 78 F. 442, 444; United States Radiator Corp. v. Henderson, 10 Cir., 68 F.2d 87, dissenting opinion at page 93 and cases there cited; Shepherd v. Midland Mut. Life Ins. Co., 152 Ohio St. 6, 87 N.E.2d 156, 160, 12 A.L.R.2d 1250.

2. New York Life Ins. Co. v. Trimble, 5 Cir., 69 F.2d 849, 850; Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568, 570, 571, 153 A.L.R. 156; Fruehauf Trailer Co. v. Gilmore, 10 Cir., 167 F.2d 324, 329; 32 C.J.S., Evidence, § 1042, page 1122. See, also, Note, 135 A.L.R. 516.

3. Jacques Wolfe & Co. v. Piplin, 183 A. 187, 188, 14 N.J.Misc. 146; Manion v.

Eder Erecting Co., 187 A. 40, 42, 14 N. J.Misc. 741.

4. Long v. Railway Mail Ass'n, 143 Neb. 949, 12 N.W.2d 113, 117; Harper v. Young, 139 Neb. 624, 298 N.W. 342, 344.

5. Drakulich v. Industrial Commission, 137 Ohio St. 82, 27 N.E.2d 932, 935; Pfister v. Industrial Commission, 139 Ohio St. 399, 40 N.E.2d 671; Aiken v. Industrial Commission, 143 Ohio St. 113, 53 N.E.2d 1018, 1020; O'Flaherty v. Industrial Commission, 75 Ohio App. 383, 60 N.E.2d 939, 941.

6. Whitaker v. Panhandle Eastern Pipe Line Co., 142 Kan. 314, 46 P.2d 862, 863.

666

65-144, 1947 Supp., G.S.Kan.1935. Doctor Tanquary had died prior to the trial. Bearman undertook to introduce in evidence a letter dated January 23, 1945, addressed to Prudential and signed by Doctor Tanquary. No foundation, of course, was laid for the introduction of such letter for the purpose of impeaching the death certificate. The letter could not have been received in evidence as proof of the facts therein stated. If admissible, its sole function would have been to impeach the statements made by Doctor Tanquary in the death certificate. Since it had no probative value on the issue as to the cause of death, its rejection by the trial court was not prejudicial.

The judgments are affirmed.