IRENE KREMA v. GREAT NORTHERN LIFE INSURANCE COMPANY.[1]

December 23, 1938.

No. 31,885.

*A. V. Rieke, Bonita F. Rieke,* and *Maurice H. Rieke,* for appellant.
*Thomas H. Quinn,* for respondent.

LORING, JUSTICE.

In a suit to recover as beneficiary on an accident insurance policy covering the life of her husband, James Krema, plaintiff had a verdict, and the defendant comes here upon an appeal from an order denying its motion for judgment or a new trial.

Defendant company insured Krema:

"Against loss resulting from bodily injuries effected, directly and independently of all other causes, through accidental means (suicide, sane or insane, is not covered) and against loss resulting from sickness due to disease, subject to all the provisions and limitations hereinafter contained."

The policy contained a further provision that:

"If such injuries within ninety days from date of accident, result, independently and exclusively of all other causes, in the loss of life of the insured, the Company will pay $1,000.00 The Principal Sum."

There was a further provision of the policy that:

"The accident insurance under this policy shall not cover accident, injury, disability, death or other loss caused directly or indirectly, wholly or partly, \* \* \* by bodily or mental infirmity, by bacterial infections \* \* \* or by any other kind of disease or medical or surgical treatment therefor, \* \* \*."

Commencing Saturday, January 16, 1937, Krema was sick for approximately a week with what appeared to be influenza. There was evidence tending to prove that on the following Saturday morning the plaintiff found indications in the kitchen which tended to show that her husband had left his bedroom during the night and had gone down to the kitchen to prepare himself a cup of Ovaltine. The night previous he had sat up at the table for his supper and seemed to be feeling well. In the morning she found him irrational and immediately called a doctor, who found that Krema's temperature had gone up to 105 degrees and that he was afflicted with a rash like that of scarlet fever. In removing Krema's pajamas the doctor found a severe bruise on his left arm in the vicinity of the elbow joint and also a bruise upon his hip. Krema died about noon of that day, and the doctor testified upon the trial that his death was due solely to pulmonary embolism due to the bruise which he had received upon his left arm. In his death certificate he gave scarlet fever as a contributing cause.

It is the defendant's contention that there is no evidence in the record to support the finding that the pulmonary embolism was due to accident and that the doctor's certificate of death so conclusively impeached his testimony as to compel a finding that scarlet fever was a contributory cause.

■ In this state when it is shown that an insured met his death by unexplained external violence there is a presumption that the means were accidental. Konschak v. Equitable L. Assur. Soc. 186 Minn. 423, 243 N. W. 691. In this case the bruises on elbow and hip were evidence of external violence. The presumption sufficiently supports the burden of proof, which is upon the plaintiff, to show that her husband met his death by accidental means.

■ The trial court properly received evidence from the doctor explaining why he entered scarlet fever as a contributory cause of the death on the certificate. The certificate is not conclusive on what it purports to say but may be contradicted and explained, as it was in this case. Under the statute, 1 Mason Minn. St. 1927, § 5366, a certificate is only *prima facie* evidence of the facts required to be stated therein. Backstrom v. New York L. Ins. Co. 183 Minn. 384,

236 N. W. 708. The doctor's testimony that scarlet fever had no causal connection with the death and that the death was caused solely by the embolism due to the bruise made a question of fact for the jury.

There were 13 assignments of error. What we have said covers all of them.

Order affirmed.