Hart, J.
 

 As a preliminary question to be considered, the defendant insists that the trial court erred in admitting opinion evidence of the physicians that the insured’s injury was caused by external and violent means, because this question was an ultimate one for the jury.
 

 Many courts hold that, although a witness may be qualified to give an opinion on a subject which may be pertinent to the issue, nevertheless an opinion, whether expert or otherwise, may not be admitted when it touches the very issue before the jury. See 7 Wigmore on Evidence (3 Ed.), 18, Section 1921;
 
 Ohio & Indiana Torpedo Co.
 
 v.
 
 Fishburn,
 
 61 Ohio St., 608, 56 N. E., 457, 76 Am. St. Rep., 437;
 
 Fowler
 
 v.
 
 Delaplain,
 
 79 Ohio St., 279, 87 N. E., 260, 21 L. R. A. (N. S.), 100;
 
 Mitchell
 
 v.
 
 Industrial Commission,
 
 135 Ohio St., 110, 19 N. E. (2d), 769.
 

 In support of its contention, defendant in its brief quotes from 17 Ohio Jurisprudence, 447, Section 352, as follows:
 

 “The opinion evidence rule has never been so relaxed as to permit an opinion to be given on the precise ultimate fact in issue which is to be determined by the jury. Not even expert testimony is admissible for such purpose. As the Supreme Court has remarked, if the vital issues of a cause could be decided upon the mere opinions of witnesses, however expert, juries might be dispensed with altogether.”
 

 The usual reason given for this rule is that the admission of such evidence constitutes an invasion of the
 
 *12
 
 province of the jury. Hence, it has been held by the courts that opinion evidence was inadmissible to support the following propositions: That a transaction was bona fide; that a person acted carefully in a specific situation; that no more force was used in the ejection of a passenger from a train than was necessary ; that a person exerted a controlling influence over a testator; that a fire could not have been started from a spark emitted from a smokestack; that a place of employment was an unsafe place to work; that if a machine had been covered with a guard, a person would not have been injured; and that there was no fraud in the procurement of a signature on a note.
 

 But this rule is subject to a well recognized exception applicable in a case where the ultimate issue to 'be determined by a jury is one depending upon the interpretation of certain scientific facts beyond the experience, knowledge or comprehension of the jury, in which event a witness qualified to speak as to the subject matter involved may express an opinion as to the probability or actuality of a fact pertinent to such issue, and the admission of such opinion in evidence will not constitute an invasion or usurpation of the province or function of the jury. 20 American Jurisprudence, 654, Section 782; 32 Corpus Juris Secundum, 243, Section 534;
 
 Cropper
 
 v.
 
 Titanium Pigment Co., Inc.,
 
 47 F. (2d), 1038, 78 A. L. R., 737;
 
 Patrick
 
 v.
 
 Smith,
 
 75 Wash., 407, 134 P., 1076, 48 L. R. A. (N. S.), 740;
 
 Piche
 
 v.
 
 Halvorson,
 
 199 Minn., 526, 272 N. W., 591;
 
 Grismore
 
 v.
 
 Consolidated Products Co.,
 
 232 Iowa, 328, 5 N. W. (2d), 646. See
 
 Drakulich
 
 v.
 
 Industrial Commission,
 
 137 Ohio St., 82, 88, 27 N. E. (2d), 932. And a medical expert may give his opinion as to the cause of certain injuries.
 
 Parkhill
 
 v.
 
 Bekin’s Van & Storage Co.,
 
 169 Iowa, 455, 151 N. W., 506;
 
 Foose
 
 v.
 
 Hawley Corp.,
 
 120 W. Va., 334, 198 S. E., 138.
 

 
 *13
 
 The reason for the admission of expert opinion in such cases, especially as it relates to the cause of injury or death, is that the determination of the issue often depends upon the application of a knowledge of anatomy or organic functions or an experience in a field not possessed by the average juror. Where the opinion of an expert is so admitted upon the ground that it concerns a matter of skill or science, there is in fact no invasion of the province of the jury because the jury itself is not supposed to be competent to deal with such matters without the aid of such opinion. 20 American Jurisprudence, 686, Section 817. Of course, the jury must still pass upon the weight and credit to be attached to the opinions given it, weakened or strengthened, as they may be, by cross-examination and by counter or corroborating testimony.
 
 Bellefontaine & Indiana Rd. Co.
 
 v.
 
 Bailey,
 
 11 Ohio St., 333.
 

 In 3 Jones Commentaries on Evidence (2 Ed.), 2460, Section 1346, the law on this subject is summarized as follows-:
 

 “Probably the majority of medical experts Who are called for the purpose of rendering an opinion as to causation have either attended or examined the person respecting whom their opinion is sought, and there seems to be no question, generally speaking, * * * that an opinion as to the cause of death or of a particular physical condition based on knowledge so acquired is admissible in evidence. Expert opinion evidence as to the cause of death or of a particular physical condition has been admitted in many cases wherein it thus appeared that the expert had attended the person in question during his illness, or examined the remains after death.” See
 
 Stouter
 
 v.
 
 Manhattan Ry. Co.,
 
 127 N. Y., 661, 27 N. E., 805.
 

 And on page 2466, Section 1348,
 
 ibid.,
 
 it is stated:
 

 “In like manner we find many authorities which
 
 *14
 
 hold that, under the circumstances of the particular case, expert opinion, usually that of a medical expert, is admissible to indicate the mode in which a particular wound or injury was inflicted or the kind of instrument, or the instrumentality, causing a wound or injury.” See
 
 Johnson
 
 v.
 
 Steam Gauge & Lantern Co.,
 
 146 N. Y., 152, 40 N. E., 773.
 

 We find no error in admitting the evidence of the medical witnesses to the effect that in their opinion Shepherd’s death was caused by external and violent means.
 

 The major question presented by the record in this case, as stated by defendant, is: “Where insured’s death was not sudden or violent and there is no claim of suicide or anything akin thereto, does a presumption of ‘accidental means’ arise upon a showing
 
 merely
 
 of death by ‘external’ and ‘violent’ means?”
 

 Under the double-indemnity terms of the policies of insurance involved in this case, the plaintiff, having the burden of proof, was required to prove that Shepherd’s death was caused not only by external and violent means, but also by accidental means. The defendant strenuously insists that there was no evidence that Shepherd’s death was caused by “accidental means.” On the other hand, plaintiff’s contention is that in addition to the proof of the nature of the injuries which caused the insured’s death, which proof she claims raises an inference of accidental death, she is aided in her burden of proof by a presumption of law, which arises in cases where death is caused by violent and external means even though the means of infliction of the injury is unknown and unexplained, to the effect that such injuries are presumed to have been caused by accidental means until the contrary is shown.
 

 A presumption of law is a procedural device which
 
 *15
 
 takes the place of evidence in certain cases until the facts in lieu of which the presumption operates are shown. It is equivalent to a substantive rule of law to the effect that a particular fact must be assumed when another particular fact or group of facts exist, or there is substantial evidence of such particular facts, unless and until the truth of the assumed fact is disproved.
 
 New York Life Ins. Co.
 
 v.
 
 Gamer, Exrx.,
 
 303 U. S., 161, 82 L. Ed., 726, 58 S. Ct., 500, 114 A. L. R., 1218. The presumption imputes to certain facts or group of facts a certain prima facie significance or' operation. It casts upon him against whom it operates the duty of meeting this imputation. Should nothing further be adduced it settles the question involved in a certain way. It serves to establish a prima facie case.
 

 One of the well recognized presumptions of the law is that, where it is shown that death resulted from bodily injury caused by violent and external means without a showing as to how the injury was in fact sustained, there is a presumption that death did not result from suicide, self-infliction of injury, criminal assault of another, or voluntary employment of the means causing death.
 
 Hassay
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 140 Ohio St., 266, 43 N. E. (2d), 229;
 
 Hrybar
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 140 Ohio St., 437, 45 N. E. (2d), 114;
 
 Missouri State Life Ins. Co.
 
 v.
 
 Roper,
 
 44 F. (2d), 897;
 
 Aetna Life Ins. Co.
 
 v.
 
 Newbern,
 
 127 F. (2d), 171;
 
 Parfet
 
 v.
 
 Kansas City Life Ins. Co.,
 
 128 F. (2d), 361;
 
 Wilkinson, Exrx.,
 
 v.
 
 Aetna Life Ins. Co.,
 
 240 Ill., 205, 88 N. E., 550, 25 L. R. A. (N. S.), 1256, 130 Am. St. Rep., 269;
 
 Konschak
 
 v.
 
 Equitable Life Assur. Society of the United States,
 
 186 Minn., 423, 243 N. W., 691;
 
 Krema
 
 v.
 
 Great Northern Life Ins. Co.,
 
 204 Minn., 186, 282 N. W., 822;
 
 Hornby, Admr.,
 
 v.
 
 State Life Ins. Co.,
 
 106 Neb., 575, 184 N. W., 84, 18 A. L. R., 106;
 
 Pru
 
 
 *16
 

 dential Ins. Co. of America
 
 v.
 
 Tidwell,
 
 163 Okla., 39, 21 P. (2d), 28;
 
 Graham
 
 v.
 
 New York Life Ins. Co.,
 
 182 Wash., 612, 47 P. (2d), 1029;
 
 Beckley National Exchange Bank, Admr.,
 
 v.
 
 Provident Life & Accident Ins. Co.,
 
 121 W. Va., 152, 2 S. E. (2d), 256;
 
 McNaught
 
 v.
 
 New York Life Ins. Co.,
 
 143 Neb., 220, 12 N. W. (2d), 108;
 
 Stuckum
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 283 Mich., 297, 277 N. W., 891;
 
 Basham
 
 v.
 
 Prudential Ins. Co. of America, 232
 
 Mo. App., 782, 789, 113 S. W. (2d), 126, 131;
 
 Grosvenor
 
 v.
 
 Fidelity & Casualty Co.,
 
 102 Neb., 629, 168 N. W., 596;
 
 Burnham
 
 v.
 
 Interstate Casualty Co., 117
 
 Mich., 142, 75 N. W., 445. And even though it is shown that the injuries causing death were received at the hands of another, the presumption is that such injuries were accidentally rather than intentionally inflicted.
 
 Olson
 
 v.
 
 Southern Surety Co.,
 
 201 Iowa, 1334, 208 N. W., 213;
 
 Kansas City Life Ins. Co.
 
 v.
 
 Nipper,
 
 174 Okla., 634, 51 P. (2d), 741. The reason generally assigned for the recognition of this presumption in the law is that it is man’s natural instinct to avoid injury and preserve life; that it is highly improbable that he will intentionally take his own life or inflict injury upon himself; and that ordinarily a third person will not intentionally and criminally inflict injury upon another.
 

 Defendant, in support of its contention that there can be no presumption aiding the plaintiff to establish death by accidental means, cites the cases of
 
 New Amsterdam Casualty Co.
 
 v.
 
 Johnson, Admx.,
 
 91 Ohio St., 155, 110 N. E., 475, L. R. A. 1916B, 1018, and
 
 Mitchell
 
 v.
 
 New York Life Ins. Co.,
 
 136 Ohio St., 551, 555, 27 N. E. (2d), 243, 245, in the former of which cases the insured suffered a dilation of the heart following the voluntary taking of a cold-water bath, and in the latter of which the insured died as the result of a ruptured sigmoid, caused by administering to himself an
 
 *17
 
 enema by voluntarily connecting a rubber tube to tbe faucet in a bathtub. But those cases did not call for the application of any presumption as to the means causing death, for the reason that the physical facts as to such means in each case were known and fully developed by the evidence.
 

 As a further contention, the defendant claims that, since there was no inference of suicide or self-infliction of injury in the instant case, there was no occasion for the application of the presumption against suicide or self-infliction of injury hereinbefore considered; that the presumption against suicide and self-infliction of injury is a negative presumption; that there is no affirmative presumption on the other hand that the injuries causing death resulted from accidental means (see
 
 Brunswick
 
 v.
 
 Standard Accident Ins. Co.,
 
 278 Mo., 154, 213 S. W., 45, 7 A. L. R., 1213); that, since the injuries may have resulted from nonaccidental means (such as attempting to lift a heavy stone post but without any mishap) instead of accidental means (such as an unexpected foot slip or an unexpected overbalancing of the stone post during an attempt to lift or handle it), there is no presumption that the means were accidental and no presumption on the other hand that they were nonaccidental; and that under such circumstances there is no basis for a verdict in favor of the plaintiff.
 

 Such contention raises an interesting question which seems quite generally to have escaped the attention of the courts. The courts in a limited number of cases involving such a question have held that, in the absence of any evidence as to whether injuries were due to accidental or nonaccidental means, the jury cannot be permitted to render- a verdict as between two undetermined probabilities, and the plaintiffs in such cases have been denied recoveries. One law writer suggests
 
 *18
 
 that in cases of unexplained death from violent means the courts may not properly say that there is a presumption that the injury resulted from accidental means rather than nonaccidental means, because the law, in such cases, indulges in no affirmative presumption but indulges only in the presumption against death by suicide or self-inflicted injury and against assault by a third person; that in such cases there there still remains two possible explanatory hypotheses, and, where there is evidence under which the jury might ascribe the injury to either one of these two, the law will indulge in no presumption as to the correctness of either; and that in the absence of further evidence the plaintiff cannot go to the jury, since the court will not permit the jury to guess which of two equally plausible explanations is correct. See Cornelius on Accidental Means, 85, 89.
 

 Such a situation was presented in the case of
 
 Carnes
 
 v.
 
 Iowa State Traveling Men's Assn.,
 
 106 Iowa, 281, 76 N. W., 683, 68 Am. St. Rep., 306. In that case the evidence indicated that the insured died from an overdose of morphine; that he might have taken the exact amount he intended to take without realizing what its effects would be, or he might have taken a larger amount than he intended. The court held that if he intended to take the exact amount which he did take the unforeseen result could not be considered as having been brought about by accident, but that if he took more than he intended the contrary would be true. Under this state of the evidence the court concluded that the law indulged no presumption whatever, and that the trial court had erred in permitting the jury to guess which of the two possible explanations was correct.
 

 In the instant case there is a presumption that the insured did not intend to do an act which would cause
 
 *19
 
 Ms death, that is, he did not intend to commit suicide. There is also a presumption that no crime was committed upon Ms person which resulted in the injuries from which he died. Furthermore, there is a presumption against his own negligence. The question remains whether the means causing injury and death and shown to be external and violent, are presumed to be accidental.
 

 The weight of authority, in cases where this question has been considered, seems to be that where it is shown that one has met his death by unexplained external violence there is a presumption that the means was accidental. The courts hold specifically that, where it is shown that a person met his death by external and violent means and there is no ground for an inference that Ms death was brought about through suicide, intentional self-infliction of injury, criminal assault by a third person, or other nonaccidental means, there is a presumption that death was caused by accidental rather than nonaccidental means. The reason for the application of such presumption is akin to the reason for the application of the presumption against suicide, namely, that a person ordinarily will not act in a manner which will foreseeably result in personal injury to himself, and that presumably he will act with due care for his own safety rather than negligently.
 

 In the case of
 
 Krema
 
 v.
 
 Great Northern Life Ins. Co.,
 
 204 Minn., 186, 282 N. W., 822, the insured left his bedroom during the night and went to the kitchen to prepare himself a cup of Ovaltine. In the morning his wife found him irrational and called a doctor who found a severe bruise on insured’s left arm in the vi•cinity of the elbow joint, and also a bruise on his hip. He died about noon that day and the medical testimony was that his death was due solely to pulmonary em-
 
 *20
 
 holism due to the bruise he received on his left arm. The court held that where it was shown that the insured met his death by unexplained external violence there was a presumption that the means were accidental; that the bruises on elbow and hip were evidence of external violence; and that the presumption sufficiently supported the burden of proof.
 

 In the case of
 
 Konschak
 
 v.
 
 Equitable Life Assur. Society of the United States,
 
 186 Minn., 423, 243 N. W., 691, the insured was found in a caboose at a railroad station 65 miles from his home. He was there attended by a doctor who found that insured had a fractured skull, a fractured right elbow and a fractured bone of the right leg. He was taken to a hospital where he died the next day. The' doctor testified that in his opinion death was the result of the injuries just mentioned. The record was silent as to how those injuries were received. It was the contention of the insurer that it must affirmatively appear from the evidence that the means which cause the death were accidental; and that it was not enough that the death may have been the unexpected result of some intentional act by the insured without mischance, slip or mishap. The court held that where a death is the unusual, unexpected or unforeseen result of an intentional act the presumption is that the death occurred by accidental means, even though there is no proof of mishap, mischance, slip or anything out of the ordinary in the act or event which caused such injury or death. Citing
 
 Taylor
 
 v.
 
 New York Life Ins. Co.,
 
 176 Minn., 171, 222 N. W., 912, 60 A. L. R., 959.
 

 In the case of
 
 Hornby, Admr.,
 
 v.
 
 State Life Ins. Co.,
 
 106 Neb., 575, 579, 184 N. W., 84, 85, 18 A. L. R., 106, 110, there was no evidence as to how the insured received the wound from which he died except that he was seen pressing his thumb and picking at it as if to remove a sliver.
 

 
 *21
 
 The court there said:
 

 11
 
 The wound and the nature of the wound are proved. Such an injury could only be the result of violent and external means, and, when the proof goes so far, the presumption is in favor of an accident. Under this condition of the evidence, aided by such presumption, we are unable to agree with the defendant’s argument that the cause of the injury must be left entirely to conjecture, or that the jury was called upon to guess, without evidence or reasonable inference to guide it, between the theory that the wound was caused through accidental means and the theory that the insured had, himself, with some instrument, voluntarily produced it.”
 

 In the case of
 
 Jenkin
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 131 Cal., 121, 63 P., 180, the court said: “That the courts will presume that the death was the result of an accident, when nothing more is shown than that it was brought about by a violent injury, and the character of such injury is consistent with the theory of accident, seems to be a rule upheld by the great weight of authority.”
 

 In the case of
 
 Cronkhite
 
 v.
 
 Travelers Ins. Co. of Hartford,
 
 75 Wis., 116, 43 N. W., 731, 17 Am. St. Rep., 184, the action was upon an accident and life insurance contract. The facts were almost identical with the facts in the instant case. The only evidence which the plaintiff was able to offer was to the effect that the decedent was a conductor on a railroad train; that he left his home to make a regular trip and returned two days later; and that at the time of his return there were marks of violence upon his back apparently recently inflicted and these injuries were, in the opinion of physicians, sufficient to produce death. The trial court ruled that from such evidence no presumption arose, but that plaintiff must show that the injuries
 
 *22
 
 were the result of an accident by proving the manner in which they were inflicted.
 

 The Supreme Court there said:
 

 “We think the court took an erroneous view of the law. Unless the injuries which are alleged to have caused the death of the insured were intentionally self-inflicted, or intentionally inflicted by some other person, or were received in dueling or fighting (in which case they would be intentional), the legal presumption is that they were accidental. No presumption can be indulged that the law has been violated, as it would have been were the injuries intentionally inflicted by another. On the contrary the presumption is that they were not. Hence, had the plaintiff proved only that the insured, at a certain time, had upon his person bruises and wounds, evidencing that he had been recently injured by external violence, and, further, that such injuries caused his death, she would have made out a prima facie case of death resulting from bodily injuries, ‘through external, violent, and accidental means.’ Were it claimed that the injuries were self-inflicted or were caused by the negligence of the insured, until such self-infliction or negligence should be affirmatively proved the same presumption of accident would prevail.” See, also,
 
 Prudential Life Ins. Co. of America
 
 v.
 
 Tidwell, supra; Baciocco
 
 v.
 
 Prudential Ins. Co. of America, infra; Mutual Life Ins. Co. of New York
 
 v.
 
 Hatten, supra; Dewey
 
 v.
 
 Abraham Lincoln Life Ins. Co.,
 
 218 Iowa, 1220, 257 N. W., 308;
 
 Metropolitan Life Ins. Co.
 
 v.
 
 Broyer, supra; Preferred Accident Ins. Co.
 
 v.
 
 Fielding, Admr.,
 
 35 Colo., 19, 83 P., 1013, 9 Ann. Cas., 916;
 
 Stevens
 
 v.
 
 Continental Casualty Co.,
 
 12 N. D., 463, 97 N. W., 862;
 
 Withers
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 58 Mont., 485, 193 P., 566;
 
 Metropolitan Life Ins. Co.
 
 v.
 
 Broyer,
 
 20 F. (2d), 818;
 
 Baciocco
 
 v.
 
 Prudential Ins. Co. of America,
 
 22 F. (2d), 700;
 
 Mutual Life Ins. Co. of New York
 
 v.
 
 Hatten,
 
 17 F. (2d), 889.
 

 
 *23
 
 On this subject, 29 American Jurisprudence, 1082, Section 1443, says:
 

 “In this respect, the authorities support the general rule that in an action on a policy insuring against death caused solely by external, violent, and accidental means, the burden of proof is on the plaintiff to show from all the evidence that the death of the insured was the result of accidental as well as external and violent means, but that where death by unexplained, violent, and external means is established, a presumption is thereby created or prima facie proof is thereby made of the fact that the injuries were accidental, without direct and positive testimony on that point, since the law will not presume that the injuries were inflicted intentionally by the deceased or by some other person.”
 

 This court has held, in construing insurance policies identical in coverage and terms with the ones involved in the instant case, that, although the burden rests upon the plaintiff to prove by a preponderance of the evidence that death was caused exclusively by external, violent and accidental means, yet, upon a showing that the death was caused by external and violent-means and under circumstances not wholly inconsistent with accident, the law raises a presumption that such death was accidental.
 
 Hassay
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 140 Ohio St., 266, 43 N. E. (2d), 229;
 
 Hrybar
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 140 Ohio St., 437, 45 N. E. (2d), 114.
 

 Although this court in the two cases last cited did not specifically apply the presumption in question to support the theory of accidental means as against nonaccidental means, yet that issue was necessarily involved in those cases and the court directly passed upon it when it held in the latter case that “upon a showing of death by external and violent means, under circumstances not wholly inconsistent with acci
 
 *24
 
 dent, the law raises a presumption of accidental death, and upon such showing, aided by the presumption, a prima facie case is made.”
 

 In view of the authorities, although many of them fail to make clear the distinction sought here, to be made, we are of the opinion that the presumption in favor - of accidental means as against nonaccidental means applies to the situation presented by the record in this case.
 

 The presumption operates only where the means of death, as distinguished from the cause of death, are unknown. This is illustrated in the case of
 
 Caldwell
 
 v.
 
 Travelers Ins. Co.,
 
 305 Mo., 619, 267 S. W., 907, 39 A. L. R., 56, wherein the court made a distinction between accidental means and accidental result and did not apply the presumption in favor of accidental means. There the action was based upon a death resulting from a surgical operation voluntarily undertaken and performed in a skillful manner. The fact that the means of the death were voluntarily assumed and were fully disclosed as distinguished from accidental means was conceded. Therefore, there existed no reason to invoke a presumption to determine the existence of an admitted and established fact.
 

 It is only after the evidence is in that the presumption may come into play to assist the plaintiff in establishing a prima facie case. The presumption does not regulate or ciiange the burden of proof, but it may, on the proof of basic facts which bring the presumption into operation, stand in lieu of any evidence of the means causing death but cannot prevail against substantial evidence to the contrary. Where the evidence makes it proper, a jury may be instructed how to use this presumption, but it should not be confused with the burden of proof under the pleadings.
 
 Travelers’ Ins. Co.
 
 v.
 
 Wilkes,
 
 76 F. (2d), 701, 705, and cases cited.
 

 
 *25
 
 As to the specific function of the presumption under consideration, some courts indicate that the presumption shifts the burden of going forward, others that it alters the quantum of evidence necessary to prevail, and still others that it shifts the burden of proof. By ' the great weight of authority a presumption of law, as is the one before us in this case, is not evidence nor to be applied as evidence. See
 
 New York Life Ins. Co.
 
 v.
 
 Gamer, Exrx., supra; Wirthlin
 
 v.
 
 Mutual Life Ins. Co.,
 
 56 F. (2d), 137, 86 A. L. R., 138. But if the party against whom the presumption operates does produce what the court deems to be substantial or, as some courts say, any evidence to the contrary as to the means causing death, the presumption disappears as a rule of law and the case must be disposed of as to the issue of means of causing death on the facts produced, independently and without reference to any presumption, to be determined under the burden of proof and on the weight of the evidence as though no presumption had ever existed.
 
 New York Life Ins. Co.
 
 v.
 
 Gamer, Exrx., supra; Prudential Ins. Co. of America
 
 v.
 
 Tuggle’s Admr.,
 
 254 Ky., 814, 72 S. W. (2d), 440;
 
 Brunswick
 
 v.
 
 Standard Accident Ins. Co., supra; Selover
 
 v.
 
 Aetna Life Ins. Co.,
 
 180 Wash., 236, 38 P. (2d), 1059;
 
 Despiau
 
 v.
 
 United States Casualty Co.,
 
 89 F. (2d), 43, 44;
 
 Jefferson Standard Life Ins. Co.
 
 v.
 
 Clemmer, supra.
 

 The trial court in the instant case properly submitted the issue of “accidental means” to the jury when, in the course of its general charge, it said:
 

 “If the plaintiff has proven by a preponderance of the evidence that the decedent’s death was caused * * * as the direct result of a bodily injury effected solely by external and violent means, and not wholly inconsistent with accidental means, there is a rebuttable presumption that such death was caused * * * by accidental means.”
 

 
 *26
 
 In passing it may be noted that in many cases the courts have held that even where the circumstances bringing about a death are not definitely known, inferences of accidental means in causing death may arise from a consideration of the surrounding facts and circumstances which have a persuasive tendency and probative weight to be considered by the jury independent of the operation of any presumption. See
 
 Watkins
 
 v.
 
 Prudential Ins. Co.,
 
 315 Pa., 497, 173 A., 644, 95 A. L. R., 869. In the instant case, the nature of Shepherd’s injury and its location in the back — a fracture of three vertebra — would support an inference that his injury was the result of accidental rather than nonaecidentai means.
 
 Cronkhite
 
 v.
 
 Travelers Ins. Co. of Hartford, supra; Preferred Accident Ins. Co.
 
 v.
 
 Fielding, Admr., supra; Stevens v. Continental Casualty Co., supra; Withers
 
 v.
 
 Pacific Mutual Life Ins. Co., supra; Konschak
 
 v.
 
 Equitable Life Assur. Society of the United States, supra; Beard
 
 v.
 
 Indemnity Ins. Co.,
 
 65 W. Va., 283, 64 S. E., 119. The opinions in some of the cases above cited contain language to the effect that there is a presumption of accidental means when death by external and violent means is proved, but the actual holdings seem to be that there is a reasonable inference of accidental death. This view seems substantially in accord with the theory of some eases that there is a “presumption of fact” as distinguished from a “presumption of law” in favor of accidental death in such a situation. See
 
 Allen, Trustee,
 
 v.
 
 Travelers Protective Assn. of America,
 
 163 Iowa, 217, 143 N. W., 574, 48 L. R. A. (N. S.), 600.
 

 The defendant claims further that even though a presumption of death by accidental means arose in the instant case, it disappeared because evidence to the contrary was produced and defendant was entitled to a directed verdict. There was evidence by
 
 *27
 
 Davidson, the owner of the farm upon which the work was being done, that he did not see Shepherd slip or fall, see anything fall on him or see anything unusual happen to him while he, Davidson, was present with Shepherd on the work. But Davidson testified that he could not recall whether he was with Shepherd all the time and finally said that he was present “most of the time — I might have walked away for 10 or 15 minutes; I don’t remember.” Davidson testified also that Shepherd complained that morning. Davidson, of course, was not with Shepherd during the week end and was not with him in the automobile trip from Shepherd’s home to Davidson’s farm that Monday morning.
 

 Davidson’s negative testimony, at best, is only a
 
 pro tanto
 
 rebuttal of the fact that Shepherd sustained an injury. However, other evidence on that point was overwhelming to the effect that Shepherd at some time or place suffered a severe injury causing his death. Under such circumstances, the court would not have been warranted in directing a verdict for the defendant. The court was warranted in submitting, as it did, the issue of accidental means to the jury with instructions that a presumption exists that the means of causing death was accidental unless and until there was adduced substantial evidence that the means of death was nonaccidental. Under these circumstances the jury found for the plaintiff.
 

 No prejudicial error appearing in the record, the judgment is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman, Stewart, Turnee and Taet, JJ., concur.