McGary, Appellant, *v.* Industrial Commission of Ohio, Appellee.

(No. 932—Decided April 21, 1956.)

*Mr. Austin C. Furbee* and *Mr. Thomas F. Joseph,* for appellant.

*Mr. C. Wm. O'Neill,* attorney general, for appellee.

Nichols, J.  This is an appeal on question of law only in an action brought by Goldie McGary, widow of James B. McGary,

deceased, wherein she seeks an award of benefits for herself and his two minor children under the Workmen's Compensation Act by reason of the death of her husband, which she claims was caused by an accidental injury received by him in the course of and arising out of his employment.

James B. McGary, the decedent in this case, was last employed by the Lorain Coal & Dock Company in Belmont County, Ohio, and, following his death on May 20, 1952, Goldie McGary, as his widow, filed the application for death benefits with the Industrial Commission. This application was disallowed by the commission both upon hearing and upon rehearing, and plaintiff perfected her appeal to the Common Pleas Court. At the conclusion of plaintiff's evidence, the trial court sustained defendant's motion for a directed verdict. There are no jurisdictional questions involved.

Plaintiff has assigned the following errors, claimed to be committed by the trial court:

1. The court erred in the admission and rejection of evidence.

2. The court erred in directing a verdict for the defendant at the close of plaintiff's evidence.

3. The court erred in overruling plaintiff's motion for new trial.

The first assignment is directed to the refusal of the trial court to admit into evidence a statement made by the decedent to a fellow employee on the day of the claimed injury, plaintiff maintaining that such statement was admissible under the exceptions to the hearsay rule pertaining to matters which are part of the *res gestae*. While it is true that a close question is presented with reference to this particular evidence, and that the admission of such evidence would probably have been justified, we hold that the rejection of the same was not prejudicially erroneous. In reaching this conclusion, we are impressed with the decision of the Supreme Court of Ohio in the case of *Potter* v. *Baker, Jr.*, 162 Ohio St., 488, 124 N. E. (2d), 140, and with particular reference to page 499, wherein Taft, J., speaking for the court, stated:

''This court does not agree with the suggestion that the application of this exception to the hearsay rule or of any of its

limitations should be left 'absolutely to the determination of the trial court.' ''

In a further discussion of this question in the *Potter case*, it is stated on page 500:

"* * * In the instant case, the trial judge, in determining whether this declaration was admissible, necessarily had to decide certain questions of fact. If his decision of those questions of fact, as reflected in his ruling on the admissibility of this declaration, was a reasonable decision, an appellate court should not disturb it. In other words, we believe that the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision.''

Our view of the evidence in the case at bar is much like the view taken by the Supreme Court in the *Potter case*, wherein it was stated:

"Some of the members of this court, if sitting as trial judges, might have reached a different conclusion from that of the trial judge in the instant case with respect to the admission of this declaration. We are, however, unanimously of the opinion that the decision of the trial judge was a reasonable one.''

We come now to the second error assigned by the plaintiff and it becomes important to examine the evidence, since the Common Pleas Court apparently found as a matter of law that reasonable minds could not arrive at different conclusions from the facts presented.

However, before discussing the facts herein, we consider it important to bear in mind the now long established rule in this state laid down by the Supreme Court in the case of *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St., 469, 189 N. E., 246, the third and fourth paragraphs of the syllabus thereof reading as follows:

"3. Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reason-

able minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him.

"4. Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

Such was the holding of the Supreme Court in the case of *Purdy, Admr.,* v. *Karentoff,* 152 Ohio St., 391, 89 N. E. (2d), 565, and in many decisions of this court, as well as the Courts of Appeals throughout the state of Ohio. The syllabus of the *Purdy case* is as follows:

"Whether a motion of defendant made at the close of plaintiff's case to direct a verdict should be sustained depends upon the evidence and reasonable inference therefrom treated in the light most favorable to plaintiff."

The record in the case at bar reveals that the decedent for several years prior to his death had been under the care of Dr. David Danenberg for diabetes mellitus but under proper treatment was able to carry on his employment and his ill condition improved. He was a motorman at the mine of the company for which he worked and was required to sit upon the motor in conveying coal cars within and without the mine. Immediately in front of the operator of the motor were a wheel used to apply brakes and a trolley pole extending from the motor to the trolley wire, similar to that remembered by most of us as being used on trolley cars on the streets of our cities. In the operation of this motor, the decedent traversed what was known as Fifteen North Passway where the grade was downhill, and when the motor would come to the bottom of this grade it would be operated at a high rate of speed. During the decedent's latter employment, the operators of the motor were experiencing considerable difficulty in keeping the trolley pole engaged to the trolley wire at this particular location, and when the pole would become disengaged from the trolley wire it would be necessary that the operator of the motor reach over the brakewheel, grab hold of the pole, and connect it again with the trolley wire.

It is the claim of the plaintiff that on or about April 9, 1952, and while the decedent was operating the motor at the location

described by the co-operator of the motor, the trolley jumped from the wire, and, as the decedent reached over the brake-wheel to attach the pulley to the trolley wire, he was struck in the region of the ribs and suffered such injury as to proximately cause him to die on May 20, 1952. It is the opinion of the members of this court that there was credible and probative evidence to support this conclusion.

There were no marks of any kind seen upon the person of the decedent at any time before the claimed injury in this case, and on the day of the claimed injury, when he was leaving for his employment, there was nothing unusual noted about him, nor were there any contusions or other evidence of injury to any part of his body. However, upon his return home from his employment and upon his being disrobed, he was seen to have black and blue marks on his chest, had difficulty in his breathing, and demonstrated distress in the region of his heart. This was made known by his holding his hands to his chest, breaking out with a cold sweat, and having the appearance of distress on his face. One witness, a co-operator of the motor upon which McGary worked, met the decedent at a sand station just outside the entrance to the mine and immediately following McGary's coming from the mine with the motor. At this time he found the decedent standing by a sand box holding himself by his side and breathing heavy. It was indicated by the referee before whom the testimony was taken that this witness indicated that the decedent was holding his body just below and over the ribs.

On the day following his injury, the decedent consulted Dr. Danenberg who saw contusions on the right chest and noted a marked disability of the chest as to pain, and a surgical binder was applied within a day or so after that time. The decedent told the doctor about his having injured his chest in the mine, and a diagnosis was made by this doctor of the fracture of the sixth and seventh ribs in the right chest. The death certificate disclosed that the decedent died of coronary sclerosis, generalized arteriosclerosis, hepatitis and diabetes mellitus.

While such death certificate states that James B. McGary died of the diseases therein set forth, the fact, definitely shown by the evidence, is that James B. McGary had worked steadily

at his employment for many years before and up to the time of his alleged accident, apparently without knowledge of any such diseases, and the record further discloses that the physician who signed such death certificate testified positively in answer to a hypothetical question that in his opinion there was a direct causal relationship between the condition of McGary's chest as he saw it, the black and blue marks, the fractured ribs, etc., and the death of the decedent. In the state of the record it was for the jury to determine whether the alleged injury was the proximate cause of the death of plaintiff's husband. Under proper instructions by the court the jury would have been authorized to determine that the injury allegedly received by McGary directly and proximately aggravated, accelerated or activated a pre-existing nondisabling condition without which aggravating injury he would not have died at that particular time.

While it is elementary that the statement made to the doctor as to how the accident happened was admissible only for the purpose of assisting the doctor in arriving at a diagnosis, and was not to be considered as any evidence of the accident having happened as alleged by plaintiff, there is other and sufficient evidence contained in the record justifying the submission of this case to a jury for a determination upon questions of fact.

Another medical expert witness was called by plaintiff and given a hypothetical question, in answer to which he stated that there was a direct causal relationship between the condition of the chest as found by Dr. Danenberg and the death of the decedent. It is interesting to note that neither of these doctors was asked to assume anything except what the record revealed from the testimony which was admitted by the trial court. They were not asked to assume that the decedent struck his chest on a wheel, but were asked only as to whether there was a direct causal relationship between the injured chest, as indicated by the black and blue marks, the fractured ribs, etc., and the death of the decedent.

In view of the manner in which the hypothetical question in this case was formulated and propounded, the law as pronounced in the case of *Burens* v. *Industrial Commission,* 162 Ohio St., 549, 124 N. E. (2d), 724, does not apply.

We find no evidence offered by the defendant to refute the

fact that the trolley pole often became disengaged from the trolley wire at the location where the decedent was required to operate the motor, and that when such occurred the operator was required to reach over the wheel to re-engage the pole with the wire.

The bruised marks and the fractured ribs could have come from nothing except physical violence, and the sole question is, therefore, as to whether the injury arose out of and in the course of the decedent's employment.

As was stated in the *Purdy case, supra,* in determining whether a motion to direct a verdict should be sustained, the court should take into consideration the evidence and reasonable inferences to be drawn therefrom and treat the same in the light most favorable to plaintiff. The evidence is quite clear in this case that it was customary for the decedent to be alone when operating the motor, and it is certainly not unusual for men to sustain severe injuries in the absence of any witnesses whatever. We do not believe that this plaintiff should be required to prove her case beyond reasonable circumstances and inferences to be drawn from the evidence, and we find much authority to support us in this conclusion. Among the most recent of the cases examined by this court is that of *Hurt* v. *Charles J. Rogers Transportation Co.,* 164 Ohio St., 329, 130 N. E. (2d), 820. While we consider the facts in the case at bar to be more forceful and convincing than those existing in the *Hurt case, supra,* we consider it informative to quote the third and fourth paragraphs of the syllabus thereof as follows:

"3. It is permissible for a jury to draw several conclusions or presumptions of fact from the same set of facts and equally permissible for a jury to use a series of facts or circumstances as a basis for ultimate findings or inferences.

"4. The weight of an inference as well as the weight of the explanation offered to meet the inference is for the determination of the trier of the facts, unless the explanation is such that reasonable minds could not reach different conclusions as to its preponderating value when measured against the weight of the circumstantial evidence."

We are also cited the case of *Shepherd* v. *Midland Mutual Life Ins. Co.,* 152 Ohio St., 6, 87 N. E. (2d), 156, 12 A. L. R. (2d),

1250. In that case, a witness, working right with the decedent, stated that he saw nothing whatever happen to the decedent, and the decedent went about his daily routine for several days following the claimed injury; and the Supreme Court, in holding that there was sufficient evidence to prove that a fracture of the cervical vertebra was from accidental means, stated:

"In passing it may be noted that in many cases the courts have held that even *where the circumstances bringing about a death are not definitely known, inferences of accidental means in causing death may arise from a consideration of the surrounding facts and circumstances* which have a persuasive tendency and probative weight to be considered by the jury independent of the operation of any presumption." (Emphasis added.)

While the defendant in the case at bar does not deny that an accidental injury was sustained, and while that question was presented in the *Shepherd case, supra,* we believe that the decision in the *Shepherd case* very definitely applies to the case now before this court.

The Court of Appeals for Cuyahoga County has recognized that accidental injuries may be established upon circumstantial evidence, and we quote from the second paragraph of the headnotes in the case of *Stalak* v. *Industrial Commission,* 26 Ohio Law Abs., 305:

"Evidence that an employee reported for work at the usual time in comparatively good health, worked until nine-thirty in the morning, suddenly became violently ill, in great pain, and wholly incapacitated, remained so throughout the day, went home when he showed objective symptoms of traumatic injury to the scrotum and groin necessitating immediate surgical operation, and died two days later as a result of affliction in that region and as a direct result of his trauma, is sufficient to sustain a finding that the employee sustained an injury in the course of and arising out of his employment, in the absence of any direct evidence to that effect."

Defendant has invited our attention to the case of *Jones* v. *Goodyear Tire & Rubber Co.,* 59 Ohio App., 371, 18 N. E. (2d). 511. A number of facts of considerable weight and probative value existing in the case at bar were missing in the *Jones case.*

Bearing in mind that the peculiar facts of each individual case are largely controlling, we cannot reconcile the *Jones case* with the case at hand.

It is the conclusion of this court that the record in this case contains sufficient competent evidence on the question as to whether the decedent sustained an accidental injury in the course of his employment, proximately resulting in his death, and that the directing of a verdict for the defendant constituted prejudicial error, and for that reason the judgment is reversed and the cause is remanded to the Common Pleas Court for a new trial.

*Judgment reversed.*

PHILLIPS and GRIFFITH, JJ., concur.