The **NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY**, Appellant,

v.

Theresa H. **GRAHAM**, Appellee.

No. 16875.

United States Court of Appeals
Eighth Circuit.

April 16, 1962.

J. V. Spencer, Jr., El Dorado, Ark., for appellant.

William L. Prewett, El Dorado, Ark., Melvin E. Mayfield and Brown & Compton, El Dorado, Ark., on the brief, for appellee.

Before SANBORN and MATTHES, Circuit Judges, and GRAVEN, Senior District Judge.

SANBORN, Circuit Judge.

This is an appeal from a judgment for the plaintiff (appellee) based upon the verdict of a jury in an action to recover double indemnity under a life insurance policy issued by the defendant (appellant) on June 23, 1960. The insured was Joseph D. Graham, the son of the plaintiff. She was the named beneficiary. The insured died September 10, 1960, from a gunshot wound in the left side of his chest. The death was either an accident or suicide. The plaintiff claimed

that it was an accident. The defendant Insurance Company asserted that it was suicide. If it was an accident, the plaintiff was entitled to double the face of the policy. If it was suicide, she was entitled only to a return of the premiums paid. The Company conceded that if the insured did not commit suicide, his death was accidental within the meaning of the double indemnity clause of the policy.

■ The issue whether the insured committed suicide was tried to a jury. The Company had the burden of proof. At the close of all the evidence, it made a motion for a directed verdict on the ground that no hypothesis other than suicide could be deduced from the evidence. The court reserved its ruling on the motion. The case was submitted to the jury under instructions to which no exceptions were taken. The jury resolved the issue of suicide in favor of the plaintiff. The Company moved for judgment notwithstanding the verdict or for a new trial. Its motion was denied. This appeal followed.

The Company asserts that the court erred in denying (1) the motion for a directed verdict and the motion for judgment notwithstanding the verdict or for a new trial, and (2) the motion for a mistrial based on an alleged prejudicial offer of proof.

The evidence was entirely circumstantial, as is usual in such cases. There is no doubt that the insured shot himself, either by accident or design, in the afternoon of September 10, 1960, in front of the house in El Dorado, Arkansas, where he lived with his parents. The gun from which the shot was fired that caused his death was a 22–410 Savage, a combination 22 rifle and 410 shotgun, with 24-inch barrels and a total length of 40 inches. The fatal shot was from the rifle barrel of the gun. There was evidence that the gun could not be fired, when cocked, by jarring or dropping it, and that it could be discharged only if the trigger was pulled or pushed. The gun was kept in the house with some other guns.

The insured was a physically tall and strong young man, recently released from military service. He evidently had a weakness for drink, and had been drinking the afternoon of his death. That afternoon he had a disappointing telephone conversation with a girl who was his friend and with whom he had discussed marriage. She was opposed to his drinking. During the conversation, realizing that he was under the influence, she broke down and cried. She refused him permission to come to see her, and made no answer to his inquiries as to whether she still loved him.

The contention of the Company was that the evidence conclusively showed that in a fit of despondency caused by alcohol and being denied permission to call upon his girl friend, the insured took the gun from the house, went down the front cement steps and intentionally shot himself. He was found in a dying condition, lying on his right side in the front yard about three or four feet beyond the steps and parallel to the street, with a portion of the gun under him, the barrel pointing toward the house, and the "trigger parts" under his hands. There were powder marks around the gunshot wound, showing that the muzzle of the gun, when fired, was within an inch of his chest.

The plaintiff's contention was that the evidence favorable to her indicated that there was no adequate motive for the insured to take his own life; that, while he was large and healthy, he was awkward; that the jury reasonably could infer that, with the gun in his hands, he had fallen down the front steps and that the fall, in some way not easily explainable, must have caused the gun to discharge and the bullet to pierce his chest.

■■ To attempt to state all of the pertinent evidence in detail could serve no useful purpose. The parties are entirely familiar with it, and so are we. The evidence was unquestionably consistent with the hypothesis that the insured killed himself by design. However, one reasonably may believe that

the evidence is not completely inconsistent with the plaintiff's claim of accidental death. In view of the fact that the plaintiff is enitled to have the evidence viewed in the aspect most favorable to her, and to have the benefit of every reasonable inference that can be drawn from it, aided by the presumption against suicide, we think it cannot be said that suicide was conclusively proven. The evidence that the gun could not be discharged without pulling or pushing the trigger does not completely negative the possibility that the trigger was not pulled or pushed accidentally. We can perceive no controlling distinction between this case and that of Dick v. New York Life Insurance Co., 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935, in which the Supreme Court reversed the decision of this Court in 252 F.2d 43. This Court had, in that case, set aside a verdict based upon a finding by a jury that an insured who was shot to death by two successive blasts from a double-barreled shotgun, which the evidence showed could only be fired by pulling or pushing the triggers, had killed himself accidentally. The Dick case arose in North Dakota, but the applicable law was similar to that of Arkansas.

 The conclusion of the trial court that the issue of suicide was, under the evidence and applicable Arkansas law, a question of fact for the jury, we think is also sustained by Dortch v. New York Life Insurance Co., 8 Cir., 268 F.2d 149, 153–155, in which the pertinent Arkansas decisions are adequately set forth. See also and compare: Tschudi v. Metropolitan Life Ins. Co., 8 Cir., 72 F.2d 306; Mutual Life Ins. Co. of New York v. Hatten, 8 Cir., 17 F.2d 889, 893–894; Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 729; Annotation to Shepherd v. Midland Mutual Life Ins. Co., 152 Ohio St. 6, 87 N. E.2d 156, 12 A.L.R.2d 1264, 1289–1292; New York Life Ins. Co. v. Prejean, 5 Cir., 149 F.2d 114, 115–116.

After a review of the entire evidence in the record, our conclusion is that the question whether the issue of suicide was, under Arkansas law, one of fact for the jury or one of law for the court was a doubtful question of local law, as to which this Court is justified in accepting the considered views of the trial judge. We have frequently said that all that this Court can reasonably be expected to do, in cases such as this, is to see that the determination of the trial court was not induced by a clear misconception of the applicable state law. See: Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Northern Liquid Gas Co. v. Hildreth, 8 Cir., 180 F.2d 330, 336; Buder v. Becker, 8 Cir., 185 F.2d 311, 315 and cases cited; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734; Village of Brooten v. Cudahy Packing Co., 8 Cir., 291 F.2d 284, 288–289; Burkhardt v. Bates, 8 Cir., 296 F.2d 315. We think the trial judge reached a permissible conclusion in deciding that the issue whether the insured committed suicide was for the jury.

 The trial court denied a motion of the defendant for a mistrial based upon the ground that, during the examination of the plaintiff, her counsel sought to have her tell the jury the teachings of the Catholic Church—of which she and the insured were members—relative to suicide, and made the following objectionable statement in the presence of the jury:

> "If the Court please, I don't mean to be insistent, but my further point is that this particular Church not only doesn't advocate, but denies a Christian burial to one who commits it [suicide], and I think we should be permitted to bring that out."

Counsel for the defendant objected to the statement on the ground that it was "designed solely to prejudice the jury in this case." Out of the hearing of the jury, counsel for the defendant asked the court to declare a mistrial on the ground that the fact that the insured had been buried from the Catholic Church was "well known to many of the members of the jury in this case, which raises in their minds the idea that the

Priest determined that the young man had not committed suicide, and brings in the back door opinion testimony of the Church."

There was no evidence in the record to show what kind of a burial the insured was given or that any of the jurors knew about his burial. The court denied the motion for a mistrial, "not without some misgiving." The motion, we think, was addressed to the discretion of the trial court, which was in a far better position than is this Court to determine whether the uncalled for and objectionable statement of plaintiff's counsel was so prejudicial as to require a retrial. We cannot say that the trial, which in every other respect was fair, was rendered prejudicially unfair by this one unfortunate incident.

The judgment appealed from is affirmed.