OPINION
Plaintiffs-appellants, Jacob Edward Ratcliff, Administrator of the Estate of Janet Marie Ratcliff, Deceased, and William Todd Anthony, appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Courtney Duff Construction Company, Inc., C.E. Kinser and Sons, William Langworthy, and Hawkins Realty.
In the early morning hours of April 17, 1994, the Monroe Fire Department was called to extinguish a fire in an apartment building located at 402 Old Street in Monroe, Ohio. The fire completely destroyed apartment number eleven, in which Janet Marie Ratcliff ("Ratcliff") and William Todd Anthony ("Anthony") resided. The remainder of the apartment building was also significantly damaged. Both Ratcliff and Anthony suffered serious burns which resulted in Ratcliff's subsequent death.
The apartment building was constructed during the early 1970s. Courtney Duff Construction Company, Inc. ("CDC") was the general contractor for the project and C.E. Kinser and Sons, Inc. ("CEK") was the electrical subcontractor.[1] The building was eventually purchased by William Langworthy ("Langworthy") and was managed by Hawkins Realty ("Hawkins") at the time of the fire.
On May 5, 1995, both Jacob Edward Ratcliff, Administrator of Ratcliff's Estate, and Anthony filed complaints in separate actions against CDC, Langworthy, Hawkins, and CEK seeking damages as a result of the April 17, 1994 fire.[2] The trial court consolidated the two separate actions.
Following extensive discovery, appellees filed motions for summary judgment. On August 1, 1996, the trial court granted summary judgment in favor of Langworthy and Hawkins. The trial court also granted summary judgment in favor of CDC and CEK in a judgment and order of judgment filed on July 12, 1996 and July 16, 1996 respectively. It is from these judgments that appellants now appeal, setting forth the following assignment of error:
 The Court below erred in granting summary judgment in favor of Appellees insofar as there existed genuine issues of material fact.
In their sole assignment of error, appellants contend that the trial court erred in granting summary judgment in favor of appellees because genuine issues of material fact remain to be resolved. Appellants argue that the fire was caused by the negligent installation of electrical cable supplying power to the range in apartment number eleven and that such negligence was the proximate cause of appellants' injuries.
Summary judgment is appropriate where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds construing the evidence in favor of the nonmoving party could reach but one conclusion which is adverse to the nonmoving party. Bostic v. Connor (1988), 37 Ohio St.3d 144, 146; Civ.R. 56(C). In response to a properly supported motion for summary judgment, the nonmoving party must set forth specific facts which demonstrate that there is a genuine issue of material fact for trial in order to avoid summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280,293; Civ.R. 56(E).
In order to support a negligence claim, a plaintiff must present evidence that the defendant was negligent and that such negligence caused the plaintiff's injury. Osler v. City of Lorain (1986), 28 Ohio St.3d 345, 347; Gedra v. Dallmer Co. (1950),153 Ohio St. 258, paragraph one of the syllabus. See, also, Simmers v. Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 645-646
(discussing elements of negligence claim). In terms of causation, a plaintiff must show that the defendant's negligence was a probable, as opposed to a possible, cause of the plaintiff's injury. Westinghouse Elec. Corp. v. Dolly Madison Leasing 
Furniture Corp. (1975), 42 Ohio St.2d 122, 127. "[T]he admissibility of expert testimony that an event is the proximate cause is contingent upon the expression of an opinion by the expert with respect to the causative event in terms of probability." Stinson v. England (1994), 69 Ohio St.3d 451, 455, citing Shepherd v. Midland Mut. Life Ins. Co. (1949), 152 Ohio St. 6,12. Thus, where a plaintiff has presented evidence that there are several possible causes of the plaintiff's injury, the plaintiff must be able to eliminate those causes for which the defendant is not responsible in order to establish that the probable cause of injury is a particular cause or causes for which the defendant is responsible. Westinghouse at 127.
Anthony testified in his deposition that on the night of the fire, he was awakened from sleep by Ratcliff who informed him that she was concerned about a red glow downstairs which she thought was the reflection of a vehicle's tail lights. Anthony stated that he got out of bed to investigate the glow and as he proceeded down the stairs to the first floor of the townhouse, he began to feel heat. Anthony stated that as he neared the bottom of the stairs, he noticed flames and realized that the apartment was on fire. Anthony testified that he grabbed Ratcliff and the two fled the apartment. Anthony stated that when they were outside of the apartment he noticed that Ratcliff was on fire so he extinguished the fire which was burning her hair and nightshirt.
William D. Yeazell, a former investigator employed by the Ohio State Fire Marshall's office, testified that he conducted a cause and origin investigation of the fire.[3] Yeazell indicated that, in his opinion, the origin of the fire was a short circuit in the aluminum cable supplying power to the range in apartment number eleven. Yeazell stated that his opinion was based upon his observation that a portion of the cable was separated when he examined the range area for the first time after the fire, the fact that there was heavy charring to the studs in the wall behind the range, and the fact that the ceiling above the wall behind the range had burned through. Yeazell stated that although he has had years of experience conducting cause and origin investigations, he was not an expert electrician and did not have any specialized electrical training.
Butler County Sheriff Captain G. Michael Grimes testified that he requested the assistance of Yeazell when conducting a cause and origin investigation of the fire because there was a rumor that the fire may have been the result of criminal activity.[4] Grimes stated that in his opinion the origin of the fire was in the interior wall behind the range in the kitchen area of apartment number eleven. Grimes stated that the basis for his opinion was a significant degradation of an aluminum wire that is present in the particular area behind the range and a lot of deep charring on the twoby-four vertical studs in the same immediate area. Grimes stated that he was not an electrician and was not an expert in electricity. Grimes also testified that he had no particular opinions as to the propriety or impropriety of electrical construction or appliance installation in the particular apartment building.
Richard H. Engelmann, an electrical engineering professor, testified that he reviewed the depositions of Yeazell and Grimes and examined photographs of the fire damage. Engelmann identified three possible sources of damage to an electrical cable: (1) it may be struck by a hammer, (2) it may be pinched by a staple driven in too far, or (3) it may be bent in a curve having too small a radius. Engelmann also stated that manufacturing defects could possibly cause damage to a cable and that a cable could be damaged after installation.
Engelmann stated that in his opinion, the electric cable supplying power to the range in apartment eleven was secured to the two-by-four wall studs with a staple.[5] Engelmann testified that the practice of installing a staple to secure an electrical cable is customary and acceptable and that the National Electric Code allows the use of staples to attach electrical cable to stud. Engelmann indicated that he cannot determine whether the staples were installed so as to cause damage to the cable. Engelmann testified that he did not believe there was a breach of any of the electrical standards pertinent to this case in terms of construction and installation. According to Engelmann, all spacing and other installation requirements appeared to have been met.
Engelmann testified that the damage shown in the photographs is a typical result of a short circuit in an aluminum cable, however, he has no way of knowing with absolute certainty whether the degradation to the wire was a cause or a victim of the fire. Engelmann also revealed that his opinion was based upon an assumption that there was a staple located at the area of the range cable that formed the origin of the fire, although he had not seen a photograph of a staple in that area.[6]
Engelmann stated that he was not a cause and origin expert and that he never visited apartment number eleven. Engelmann also stated that he had no personal knowledge regarding the staples or cable used on the particular job in this case or the depth at which the staple he viewed in the photographs was driven into the stud behind the range.
Timothy G. Brennan, an electrician, testified that the type of cable which was used on the range circuit in apartment number eleven was SER, which was approved by the National Electric Code for such a use. Brennan stated that based upon the photographs he observed, he believed that there was a breakdown in the cable at the point of separation behind the range which caused overheating within the cable. The basis for Brennan's opinion was the destruction of the cable at the point of separation identified in the photographs behind the range. Brennan testified that from the amount of charring that is on the two-by-four stud behind the range, he believed that there was a short circuit caused at that point in the cable.[7]
Brennan stated that possible causes for a short circuit are a fastening item, such as a staple, breakdown of the cable itself, such as a manufacturing defect, or breaching of the cable by some external item, such as a nail driven into the cable. Brennan also stated that based upon what he observed in the photographs, it is possible that the cable was damaged by a person pulling on the cable.
Brennan testified that in his opinion, based upon his observation of photographs taken after the fire, the type of staple used was not designed for use on the type and shape of cable utilized for the range circuit.[8] Brennan stated that a cable staple with a rounded configuration rated for SER cable should have been used. However, Brennan could not verify the size of the cable staple used by looking at the photographs. Brennan also testified that in his opinion the cable separated due to a breakdown in the cable at the point identified behind the range, either by something being fastened to it, pierced into it, or a breakdown of the insulation within the cable.
Brennan stated that he had not viewed the cables in apartment eleven and had absolutely no personal knowledge concerning apartment eleven other than second-hand knowledge derived from photographs, reports and discussions with other people. With reference to the 1971 National Electric Code, Brennan stated that he did not believe that there were any National Electric Code violations in apartment eleven. Brennan identified a variety of possibilities as to how, electrically, the fire could have occurred. However, without viewing the actual cable behind the range, Brennan stated that, from an electrical standpoint, there is no way of specifying which of the numerous possibilities he identified could have caused a short circuit in the range cable.
Ralph Kinser, one of the owners of CEK, the electrical subcontractor responsible for wiring the apartment building, testified that SER cable was used to the breaker panels and that SEU number six cable was used for the range circuit because that is required by the National Electric Code. Kinser testified that he believed Viking UL approved staples were used to fasten the electric cable to the wall studs. Kinser stated that the staples were horseshoe-shaped and flat across the top. Kinser stated that the Viking staple used on the 402 Old Street job has a breakaway point making the staple weaker in the middle so that it conforms to the contour of the cable. Kinser testified that in order "to crimp the SEU cable with the Viking staple, you'd have to almost intentionally, you just have to pound the thunder out of it to get it to damage it, you'd have to rear back a real good blow."
Based upon a thorough review of the record, we find that appellants have failed to offer any admissible evidence that the cause of the fire in this case resulted from the negligence of any of the appellees. See Stinson at 455; Osler at 347. While appellants have offered numerous possible causes of the fire, the record is devoid of any proximate cause which would make appellees liable in negligence for appellants' injuries. See Westinghouse at 127. Accordingly, we find that because there are no genuine issues of material fact, a jury could not reasonably find in favor of appellants and the trial court properly granted summary judgment in favor of appellees. See Bostic,37 Ohio St.3d at 146. Appellants' sole assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] The record indicates that CEK is no longer incorporated.
[2] The original complaints did not name CEK but were later amended to include CEK.
[3] Yeazell stated that the investigation was conducted strictly from a criminal standpoint in order to determine whether the fire was the result of criminal activity.
[4]. Grimes indicated that the investigation found no evidence to support the rumor that the fire resulted from criminal activity. Grimes also stated that had the investigation been conducted from a civil standpoint, additional investigative work would have been conducted.
[5] Engelmann stated that staples are placed over the cable, h eld against a stud or joist, and hammered into the stud or joist.
[6] According to Engelmann, there must be a staple at the place on the cable that failed if the damage was caused by a staple.
[7] Brennan testified that a staple or a connection device could put pressure on the cable so as to cause a short circuit. Brennan stated that either the original installer could have put in the staples, or another person such as a plumber, electrician or another subcontractor may have moved the cable and then stapled it back.
[8] Brennan stated that SEU cable is flat and SER cable is round and that SER cable is required for a range circuit. The particular type of staple that should secure round SER cable conforms to the shape of the cable while keeping the cable fastened to the stud.